428 A.2d 1382

**COMMONWEALTH of Pennsylvania**

v.

**Johnnie BOONE, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 13, 1979.

Filed April 24, 1981.

Petition for Allowance of Appeal Denied Aug. 18, 1981.

John W. Packel, Chief, Appeals, Assistant Public Defender, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, President Judge, and WATKINS and HOFFMAN, JJ.

PER CURIAM:

Following a jury trial, appellant was convicted of possession of an instrument of crime, simple assault, robbery, and attempted rape. Post-verdict motions were denied, and appellant was sentenced to a term of imprisonment of eight to twenty years. This appeal is taken from the judgment of sentence imposed.

The case arose out of an incident that occurred on December 2, 1977. While the victim stood in the foyer of her apartment, she was threatened by appellant, who was wielding a knife. Appellant took several items of property from her, felt under her blouse and skirt, ordered her to lie down, and revealed his intention to rape her. The victim maneu-

vered herself next to the buzzer of her neighbor's apartment and activated the intercom. When the neighbor responded to the call, appellant fled. The police who had been summoned by a neighbor stopped two men, appellant and a passerby, a short distance from the victim's apartment. The passerby was released when the victim identified him as a man who tried to help her, and appellant was arrested when the victim identified him as her assailant.

Appellant's first argument claims that the lower court erred when it refused to ask a question on voir dire which was designed to probe the potential racial bias of prospective jurors. Appellant, who is black, submitted the following two voir dire questions to the trial judge:

1.  Do you get upset or take special note when you see a person of a different race in your neighborhood or when you see people of different races walking or talking together or holding hands?

2.  The defendant in this case, Johnnie Boone, is black. Would this fact concerning his race in any way interfere with your ability to give him a fair trial?

Although the trial judge asked the second question of the jurors, he denied the defense request that the first be asked.

Instantly, the prosecution involved a confrontation between a black defendant and a white victim. It is true, of course, that in a proper case defendants have the right to inquire into possible racial prejudice that a venireman may have. This right, however, is not boundless. *Commonwealth v. Segers*, 460 Pa. 149, 331 A.2d 462 (1975). As the United States Supreme Court stated in *Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973): "The trial judge was not required to put the question [as to racial bias] in any particular form, or to ask any particular number of questions on the subject, simply because requested to do so by petitioner." *Id.* at 527, 93 S.Ct. at 850. Accordingly, the permissible scope of voir dire questions remains within the sole discretion of the trial judge and his decision will only be reversed for palpable error. *Commonwealth v. Futch*, 469 Pa. 422, 366 A.2d 246 (1976); *Commonwealth v.*

*Garnett*, 267 Pa.Super. 41, 405 A.2d 1293 (1979). The present record demonstrates that the trial judge did not exceed his discretion, for the second question submitted by appellant and asked by the trial judge was adequately designed to disclose any possible racial prejudices that the veniremen might have. *See generally Commonwealth v. Rice*, 477 Pa. 221, 383 A.2d 903 (1978). Moreover, this second question was asked in a context which permitted discovery of racial prejudice among potential jurors. In point of fact, after the panel had just been told that the defendant was a black man and that one charge in the case was attempted rape, the trial court asked whether the nature of the charges would make it impossible for the juror to give the defendant a fair trial.[1]

Finally, it should be noted that the question appellant sought to ask jurors, concerning fraternization between blacks and whites, had nothing whatever to do with the factual posture of the case, thus distinguishing the case from *Commonwealth v. Christian*, 480 Pa. 131, 389 A.2d 545 (1978), and *Commonwealth v. Brown*, 464 Pa. 625, 347 A.2d 716 (1976). In both *Christian* and *Brown*, fraternization between a black male and a white female became an issue at trial,[2] and the Pennsylvania Supreme Court required inquiries into bias against such fraternization be made upon appellant's request. Here, however, the crime was simply a violent attack by a stranger upon the victim, and the only defense proffered was that appellant had been misidentified as the attacker. After reviewing the record in detail and realizing that voir dire requests concerning racial bias are to be closely evaluated in light of the facts of each case, *Commonwealth v. Futch, supra*, 469 Pa. at 428, 366 A.2d 246,

---

1. Also, near the end of voir dire, the judge asked whether any persons felt that they could not fairly try the defendant for reasons which they did not wish to articulate. Because some individuals prefer to keep their views on race or sex to themselves, this question provided yet another opportunity for eliminating jurors whose views might unfairly prejudice the defendant.

2. In *Christian* there was testimony that appellant had made sexual advances toward another white woman, and in *Brown* the defense was consent.

we conclude that the trial court did not err in denying the voir dire question in issue.

■ In his second argument, appellant objects to the jury charge concerning the prosecutrix's identification testimony; he specifically claims that the charge favored the prosecution and failed to instruct the jurors that identification testimony must be received with caution. The Pennsylvania Supreme Court established the proper rules for formulating a jury charge on identification testimony in *Commonwealth v. Kloiber*, 378 Pa. 412, 424, 106 A.2d 820, 826 (1954):

"Where the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution—indeed the cases say that 'his [positive] testimony as to identity may be treated as the statement of fact.' (citations omitted) For example, a positive, unqualified identification of a defendant by one witness is sufficient for conviction even though half a dozen witnesses testify to an alibi. (citations omitted).

"On the other hand, where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the court should warn the jury that the testimony as to identity must be received with caution."

Contrary to appellant's assertion, we find that the charge, when viewed as a whole, *Commonwealth v. Bishop*, 472 Pa. 485, 372 A.2d 794 (1977); *Commonwealth v. Kwatkoski*, 267 Pa.Super. 401, 406 A.2d 1102 (1979), more than adequately covered all of the elements outlined in *Kloiber*. The charge as presented to the jurors reads as follows:

There is some question here about identification. Identification testimony should always be approached with a great deal of caution, a great deal of caution. You should examine everything very carefully. You should consider

carefully the length of time that this encounter took inside of this vestibule foyer, the entrance to this house. You must consider the lighting that was in there when these two people were face to face. You must consider the intensity of the moment. You must consider that which was going on at that time as you heard from the witness stand.

Would this conduct, would these actions imprint the identification more indelibly in the victim's mind or would it not do so? You have got to consider whether the opportunity for positive identification was good. The law goes on to say, mindful of the caution, that if you find that the opportunity for positive identification is good, and the witness is positive in her identification, and her identification is not weakened by prior failure to identify but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution, indeed, her positive testimony as to identity may be treated as a statement of fact.

Because this charge instructed the jury to treat identification testimony as "a statement of fact" only where the identification testimony remained positive and unqualified, and because the charge warned that "Identification testimony should always be approached with a great deal of caution. . . .," the important substantive provisions of the *Kloiber* charge were presented to the jury."[3]

■ Appellant's third issue is whether the trial court erred during its charge on impeachment evidence by referring to defense witness, Bernard Griggs, as a "burglar." The pertinent portion of the charge in question reads:

With respect to one of the witnesses who testified here this morning who admitted that he was a convicted bur-

3. Within the context of appellant's second argument, he raises several related issues, including allegations that the trial judge unfairly emphasized the theory advanced by the prosecution, that the trial judge offered his opinion concerning the identification problem, and that the trial judge improperly used the phrase "statement of fact" in the charge on the use of identification testimony. The record clearly supports our conclusion that none of these tangential issues bears any merit.

glar; that conviction has nothing to do with the facts of this case. As has been pointed out to you, the only reason such matters can be brought to your attention in this whether or not you can believe a burglar when he testifies in a courtroom. It is a question of credibility and it was only asked of that witness to possibly impeach that witness in your eyes.

The true question in issue is whether such a charge tended to unduly inflame the minds of the jury, so as to make them incapable of determining the witness' credibility for themselves. Absent such overbearing influence, no error was committed. *See Commonwealth v. Zeid,* 206 Pa.Super. 13, 211 A.2d 285 (1965) (because the issue of a witness' credibility remained for jury consideration, the trial judge's instruction on credibility was not improper). In the present case, there was no dispute as to the fact that the witness was a burglar; the witness had admitted this himself during his testimony at trial. Thus, the judge was not expressing a personal opinion in the charge when he referred to witness Griggs as a burglar. Moreover, before issuing the charge concerning the testimony of witness, Bernard Griggs, the trial judge expressly informed the jurors that in determining credibility, of Bernard Griggs they were to "exercise [their] own intelligent judgment and use such reasonable standards as you employ in your daily lives in deciding matters of importance." At this juncture, the trial judge also discussed many of the factors which might influence the jurors' decision concerning credibility. In light of this balanced discussion of the jury's responsibility to weigh each witness' credibility fairly, the use of the word "burglar" cannot have had the prejudicial effect on the jury that appellant claims.

■ In his fourth allegation of error, appellant asserts that the lower court incorrectly instructed the jury on the charge of possession of an instrument of crime under 18 Pa. C.S. § 907(a). We agree and, accordingly, reverse the lower court on this single point. The actual charge entered by the court reads:

"Now here we are talking about the knife that was introduced into evidence. There is nothing wrong with owning a knife such as this one. But if it is used for a criminal purpose, it becomes an instrument of crime. If you should find beyond a reasonable doubt that this defendant used a knife for a criminal purpose and this is the knife, you should find him guilty of this charge. If you do not so find, then you must find him not guilty."

Appellant contends the above charge did not comport with the statutory definition of the crime, because it failed to recognize that the crime is comprised of four elements: (1) possession of an instrument; (2) commonly used for criminal purposes; (3) under circumstances not manifestly appropriate for lawful uses it may have; (4) with intent to employ it criminally. *See* 18 Pa.C.S. § 907(a). *See also Commonwealth v. Allen*, 466 Pa. 474, 353 A.2d 452 (1976); *Commonwealth v. Morgan*, 265 Pa.Super. 225, 401 A.2d 1182 (1979). Inasmuch as the Commonwealth concedes the court's charge was erroneous in this regard, we will reverse the conviction for possession of an instrument of crime and remand for a new trial on that charge.

After the jury had deliberated for some time, it asked to have the crime of attempted rape redefined. Appellant's fifth allegation of error asserts that the trial judge incorrectly instructed the jury on the meaning of the phrase "substantial step" when he recharged the jury. The charge given reads as follows:

I said to you before that rape is sexual intercourse by force between two people who are not husband and wife. When I spoke of force, I said if the force or threat of force is such that a reasonable woman would be kept from resisting, then the legal requirement of force has been satisfied. In other words a woman does not have to die fighting.

I said that this defendant is charged with attempted rape. You recall the testimony about what happened in the vestibule and what the victim testified to and you will recall that there was a demand immediately at that point

that he go with her into her apartment and she refused and then was also testimony that at that point there was a demand that she lie on the floor and he said that when she didn't lie on the floor, he was going to have intercourse with her.

If you find these facts to be true beyond a reasonable doubt—and you have got to analyze these facts. You have got to ask yourselves these questions. Does this conduct, what happened in that vestibule or foyer, consider also the demands made upon her about lying of the floor and his telling her what he is going to do, does this show that what he intended to do to her, to the victim? Did he intend to rape her? Ask yourselves this question: does his fondling of her—there was testimony he touched her body under her clothing and the language that he used to her—is that a step in the direction of a rape? In other words, if there is just talk at all and only talk, obviously that is not an attempted rape or any other crime. There must be a step taken in the direction of the completion of the act.

Where these acts, did they amount to a substantial step for a rape? Were they what the law calls an overt act? I believe I went on to say if you find all this beyond a reasonable doubt, you should find him guilty of attempted rape. If you do not so find, then you must find him not guilty. I went on to say if it is impossible or if the room is too small and so on, or if it is too public a place, that is irrelevant to the issue. You know what a rape is and what you heard from that witness stand, does that language, do those actions go beyond mere thinking or are they a step, an overt step in the direction of that which the defendant intended, and that was rape? I don't know if I have been helpful to you or not.

In objecting to this charge appellant specifically claims that the use of the term "overt act" permitted the jury to convict him on insufficient evidence. He argues that the term "overt act" is from the law of conspiracy, where it means an act which may be of less consequence than the type of act

required to convict one of criminal attempt.[4] Appellant, however, fails to note that the jury did not have the opportunity to confuse the elements of criminal attempt with those of criminal conspiracy; since appellant was not charged with criminal conspiracy, no jury instructions concerning that crime were given. Moreover, the trial judge neither defined the term "overt act" nor used the term in accordance with conspiracy law. Rather, a reading of the entire charge indicates that the term was used, and the jury could only have understood it, as a synonym for "substantial step," the type of act needed to support an attempt conviction. The charge, viewed as a whole, *Commonwealth v. Bishop, supra; Commonwealth v. Kwatkoski, supra,* focused the attention of the jurors on the proper issues. Appellant's claim to the contrary is meritless.

As his final allegation, appellant objects to two passages in the prosecutor's closing argument. In objecting to the first passage, appellant asserts that the district attorney expressed his personal opinion that the testimony of defense witness, Bernard Griggs, was perjured and that defense counsel had suborned that perjured testimony. The passage reads:

Now, I want to talk about Mr. Griggs, Bernard Griggs who testified this morning. First of all, what is most important is that it is your memory that holds, not what counsel says. Counsel says that the officer testified that it was Mr. Griggs who was walking up the street. That officer did not say Bernard Griggs was walking up the

4. To further illustrate his point, appellant cites to the distinction Professor Rollin Perkins has drawn between overt acts in attempts and conspiracies: according to Professor Perkins, "The function of the 'overt act' is quite different in the two offenses. In the case of attempt the act must go beyond preparation because the attempt is deemed a punishable segment of the crime intended. But if the statute requires an 'overt act' for conviction of conspiracy, whether such act is held to be a part of the conspiracy or only required evidence thereof, the purpose of the requirement is merely to afford 'a locus poenitentia' so that before the act done (sic) one or more of the parties may abandon their design, and thus avoid the penalty prescribed by the statute." Perkins on Criminal Law, 618 (2d ed., 1969).

street, who said Bernard Griggs was the passerby, was Bernard Griggs. He is the only one who said that. The victim did not say it was Bernard Griggs and the officer who stopped those people did not say it was Bernard Griggs. Counsel wants you to believe it was Bernard Griggs. He said when did Bernard Griggs talk about it? How did Bernard Griggs know to come here today? Did he talk about the case or did he happen to show up? Did he talk to the defense attorney? How did he know to come here today? Did he talk about the case or did he happen to show up? Did he talk to the defense attorney? How did he come to know about the dog? His eleven year friend, you don't think he knows about the case and he is going to call him as a witness and do you believe—

(Defense Counsel): Objection, Your Honor. It is conjecture that he is basing that upon.

THE COURT: It is argument and I will allow it.

(Prosecutor): Do you believe this attorney would call a man and put him on the stand and not have any idea what this man was going to say or that man didn't know anything about the case? No, no. You think about it. Use that common sense. And you know how Bernard Griggs knew about the dog on the street—

(Defense Counsel): Objection.

THE COURT: I will overrule your objection.

Prejudice has been consistently found by our judiciary where the remarks of the prosecutor have been unsupported by any factual evidence and thus, have merely reflected the prosecutor's personal judgment. *See e. g. Commonwealth v. Kuebler*, 484 Pa. 358, 399 A.2d 116 (1979); *Commonwealth v. Whack*, 482 Pa. 137, 393 A.2d 417 (1978); *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971). Where, however, the prosecutor's comments, as is the case here, are limited to the facts and all reasonable inferences drawn therefrom, no prejudice results. *Commonwealth v. Glass*, 486 Pa. 334, 405 A.2d 1236 (1979); *Commonwealth v. Pfaff*, 477 Pa. 461, 384 A.2d 1179 (1978); *Commonwealth v. Gilman*, 470 Pa. 179, 368 A.2d 253 (1977); *Commonwealth v.*

*Bullock,* 284 Pa.Super. 601, 426 A.2d 657 (1981). Instantly, there is sufficient evidence in the record suggesting the inconsistencies of Griggs' story. According to the direct testimony of defense witness, Griggs, he and his friend of eleven years, Johnnie Boone, were walking along South street onto 10th street, with appellant, Boone, walking about ten feet in front of Griggs, when the victim exited her apartment building and told Griggs to "Stop. Someone tried to rape me." Griggs further testified that the police stopped both he and appellant, but that they released him after the victim identified appellant as her assailant. During cross-examination, this earlier direct testimony given by Griggs became suspect when Griggs stated (1) that he reached the scene of the crime about 9:30 p. m., three hours after the crime had occurred;[5] (2) that he could not identify the victim although he had allegedly been in her presence, and (3) that he could not remember the day or even the month of the incident. Moreover, when Officer Kusienski, the arresting officer, was asked on direct if "the two males whom you stopped, are . . . in Court today," the officer replied, "One is, sir," and then identified the appellant; at no time did Officer Kusienski recognize Bernard Griggs as the passerby whom the victim identified as the man coming to her aid. Although Officer Kusienski never positively identified Griggs as the passerby, defense counsel in his summation attributed such testimony to the officer when he stated: "When he (Officer Kusienski) got around the corner, he saw three people. He saw the victim, (sic) he saw Mr. Boone, (sic) he saw Mr. Griggs. Mr. Boone and Mr. Griggs are running toward him." Finally, Mr. Griggs was never identified by the victim as the passerby. Given the above facts, it is evident that the statements made by the prosecutor in his closing were limited to the factual evidence revealed at trial and all reasonable inferences drawn therefrom. *Commonwealth v. Glass, supra; Commonwealth v.*

---

5. For the story given by Griggs on direct to be true, he would have had to pass the victim's apartment building within seconds of the attempted rape.

*Pfaff, supra; Commonwealth v. Bullock, supra.* Accordingly, the prosecutor cannot be faulted now for misconduct.

■ Appellant's other assertion within this argument, that the prosecutor during his summation accused defense counsel of suborning perjury, is not supported by the record. When viewing the totality of the prosecutor's summation we are able to discern that the purpose of the prosecutor's argument was simply to ask the jury to recognize the inconsistencies present in the record, and to consider whether the story offered by Griggs was to be believed or whether the fact that Griggs was a longtime friend of appellant would cause him to fabricate a story in appellant's favor. Even where the language of the prosecutor is "intemperate, uncalled for and improper, a new trial is not necessarily required" unless the unavoidable effect of the language" would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975), quoting *Commonwealth v. Simon*, 432 Pa. 386, 394, 248 A.2d 289, 292 (1968). No such prejudice results in the case at bar, especially in light of the judge's extensive charge cautioning the jurors about the weight to be given the arguments of counsel. This charge further insured that the jurors would not be unduly influenced by the arguments proffered by either the prosecutor or defense. *See e. g. Commonwealth v. Ashmore*, 266 Pa.Super. 181, 403 A.2d 603 (1979); *Commonwealth v. Walls*, 261 Pa.Super. 321, 396 A.2d 419 (1978).

■ The second passage from the prosecutor's closing objected to by appellant follows:

His Honor has told you that when the defendant comes into the courtroom he is presumed to be innocent. Words are important, he is presumed to be innocent. That is the way this system works. You see, the responsibility rests with me to show you that he is guilty. So I have got to go first because we presume him to be innocent. And that presumption stays with him even though he was arrested seconds after the event occurred—

(Defense Counsel): Objection.

THE COURT: I will overrule your objection.

(Prosecutor): He is presumed to be innocent even though he was arrested in the same block that it occurred. He is assumed to be innocent even though he was arraigned. He is assumed to be innocent even though he went to hearings. He is assumed to be innocent even though an Information is filed against him. He is presumed to be innocent when he comes into the courtroom and people testify that I locked him up, that I caught him, that I took these things from him. He is presumed to be innocent even though someone points to him and says that is the man. That is the way the system works. That presumption stays.

When you, ladies and gentlemen, go into that jury room and you start to deliberate, when you go over these facts and this evidence and when you put that testimony together like the pieces of a puzzle and you see that picture of what Johnnie Boone did, then that presumption of innocence is taken away, that cloak is removed and Johnnie Boone will stand before you as Johnnie Boone stood before the victim on December the 2nd.

His Honor told you about the standards that we have to prove him guilty. When he comes in, you just cannot look at him and on mere suspicion say that the man is guilty, that is not the standard.

Appellant claims that the use of the phrase "even though" throughout the above quoted passage was an invitation to the jury to disregard the presumption of innocence. On its face, the statement regarding the effect of the presumption of innocence is correct; that is, the presumption is not overcome by the fact that a defendant has been arrested, arraigned, etc., but it is the burden of the prosecutor to prove the defendant's guilt. *See Commonwealth v. Smihal,* 182 Pa.Super. 232, 126 A.2d 523 (1956). Moreover, we again note that the judge's charge cautioning the jurors about the weight to be given the arguments of counsel insured that the jurors would not be unduly influenced by the arguments

of counsel, but instead would review the case and make an independent determination of appellant's guilt or innocence. The judge also set forth in his charge the law regarding presumption of innocence. Specifically, the judge said:

This defendant comes before you presumed to be innocent of the crimes for which he has been charged ... The fact that the defendant has been charged with the commission of a crime cannot be considered by you as any evidence of his guilt. In other words, members of the jury, the law does not require the defendant to prove that he is innocent of the crimes for which he is charged. But on the contrary, the law places upon the Commonwealth the burden of proving the defendant's guilt.

These instructions to the jury prevented any misunderstanding on the part of the jury concerning the correct standard for the presumption of innocence. *See e. g. Commonwealth v. Ashmore, supra; Commonwealth v. Walls, supra.*

Judgments of sentence for simple assault, robbery and attempted rape affirmed. Judgment of sentence for possession of instruments of crime reversed and remanded for a new trial consistent with this opinion.