462 A.2d 1362

**COMMONWEALTH of Pennsylvania**

v.

**Leroy RICHMOND, Appellant.**

Superior Court of Pennsylvania.

Submitted March 23, 1983.

Filed July 8, 1983.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HESTER, JOHNSON and POPOVICH, JJ.

HESTER, Judge:

Appellant raises a solitary issue on this appeal; he avers that the trial judge committed reversible error by his refusal to include certain requested questions in the voir dire of the veniremen. A close and careful scrutiny of the record reveals no such error by the trial judge. Hence, we affirm.

The events which resulted in the instant prosecution occurred on February 6, 1981. The victim was entering her Philadelphia apartment in the early evening hours on that date when appellant forced his way inside. After appellant produced a gun, the victim quickly surrendered her cash and offered him her jewelry in exchange for her life. Appellant accepted the cash and then instructed the victim to "get undressed and go to the bed." The victim remained calm and managed to engage appellant in conversation for a short while. In the interim, a neighbor overheard the victim's pleas and summoned the police. Upon their arrival, appellant was observed with his arm around the victim's neck, attempting to escape. He was quickly apprehended, however, as he fled through the rear door.

As a result of this incident, appellant was charged with the crimes of attempted rape, burglary, robbery, and possessing an instrument of crime. Following a trial by jury, a defense demurrer to the charge of attempted rape was sustained. Appellant was convicted on the remaining charges and was sentenced to a total of nine to eighteen years incarceration, following the denial of timely post-trial motions.

As stated above, appellant's arguments on this appeal are limited to the voir dire process. Appellant asserts that the trial court deprived him of his right to a fair trial before an impartial jury by refusing to ask prospective jurors a series of questions submitted by defense counsel. Appellant complains that the trial judge failed to adequately explore certain fundamental issues which may have highlighted any bias or prejudice harbored by the veniremen, specifically,

racial prejudice, police credibility, and the presumption of innocence.

■ It is axiomatic that the paramount purpose of the voir dire system is the assemblage of "a competent fair, impartial, and unprejudicial jury." *Commonwealth v. Davis*, 282 Pa.Super. 51, 54, 422 A.2d 671, 672 (1980); *Commonwealth v. England*, 474 Pa. 1, 375 A.2d 1292 (1977). In furtherance of that goal, possible racial prejudice of a prospective juror may be an appropriate subject of interrogation by the trial judge if of particular relevance to the case.[1] *Commonwealth v. Christian*, 480 Pa. 131, 389 A.2d 545 (1978); *Commonwealth v. Futch*, 469 Pa. 422, 366 A.2d 246 (1976); *Commonwealth v. Brown*, 464 Pa. 625, 347 A.2d 716 (1975).

■ Although the defendant is vested with the right to explore racial bias possessed by a venireman, this right is not without limits. The trial judge is not required to put the question in any particular form, or to ask any specific questions on the subject, merely because requested to do so by the defendant. *Commonwealth v. Boone*, 286 Pa.Super. 384, 428 A.2d 1382 (1981).

■ Nevertheless, appellant insists that the lower court erred because it did not propound a question to the potential jurors in the exact form submitted by the defense. The following question was rejected by the trial judge:

"Would you, or do you, get upset or take special note when you see a white girl and a black man walking together; talking together; holding hands?"

Instead, he modified the question and queried the veniremen:

"As you see, the defendant is a black man. I understand that the victim was a white girl. Let me ask you this question: Would anyone here get upset or take special notice if you see a white girl and a black man together either walking or talking together?"

1. Herein, the subject of racial prejudice arose because appellant was a black male accused of various offenses against a white victim.

Appellant argues that the trial court's deletion of the phrase "holding hands" rendered the question impotent to discern those prospective jurors whose racist sentiments would prevent them from ruling objectively upon charges of sexual offenses.

In support of his argument, appellant refers us to *Commonwealth v. Brown, supra.* Therein, a black male was charged with forcible rape of a white victim. The Pennsylvania Supreme Court ruled that the lower court committed reversible error by refusing to ask the veniremen the identical question under discussion herein. Justice O'Brien, writing for the court, opined, "[t]he question was designed to elicit the prospective jurors' bias or prejudice concerning black-white relationships which, if shown, would subject them to disqualification." *Id.* 464 Pa. at 629, 347 A.2d at 718.

However, neither that court nor this court has ever held that any endeavor to discover racial bias must be in any particular form or else fail in that regard. The *Brown* court made no mention of any other questions included by the trial judge in his voir dire examination which would uncover racial prejudice. We can only conclude that, in the absence of the challenged question, no other attempt was made to determine the impartiality of the potential jurors with respect to the racial issue. Thus, the Supreme Court found that Brown had been denied due process of law.

The same question was once before the subject of an appeal to this court in *Commonwealth v. Boone, supra.* Therein, the prosecution involved the rape of a white victim by a black defendant. The trial judge refused to present to the veniremen the question concerning people of different races holding hands. In contrast to *Brown*, however, the lower court in *Boone* did ask an additional question which sought to ferret out the existence of racial prejudice among the veniremen.[2] We observed that the second question

2. The question propounded by the trial judge was:

submitted by appellant and asked by the trial judge was adequately designed to disclose any possible racial prejudices that the veniremen might have. *Commonwealth v. Boone, supra,* 286 Pa.Superior at 388, 428 A.2d at 1384. As we stated above, the trial judge is not required to frame the questions relating to racial prejudice in any exacting fashion. The scope of the voir dire questions remains within the discretion of the trial judge and will not be reversed absent a flagrant abuse of that discretion. *Commonwealth v. Futch, supra.*

As we pointed out above, the trial judge in the case at bar did pose a question to the potential jurors on the subject of racial bias. He then further asked:

"Is there anyone here who gets particularly upset to such a degree that it would interfere with their judgment of the facts?"

This question, although stated in very general terms, provided those potential jurors who only became offended when confronted with sexual crimes between races with an opportunity to reply. Since no one did, we find no error. Rather, we are persuaded that the lower court protected appellant's due process rights and assured him of a fair, impartial, and unprejudiced jury through his supervision of the voir dire examination.[3]

■ Appellant also contends that the voir dire was inadequate in light of the trial court's failure to ask the following question as requested by the defense:

"Would you be more likely to believe the testimony of a police officer than the testimony of a civilian witness, merely because of the officer being a policeman?"

While the trial judge did not adopt the exact language of the above question, and as we have seen, he is not bound to

"The defendant in this case, Johnnie Boone, is black. Would this fact concerning his race in any way interfere with your ability to give him a fair trial?"

3. Assuming *arguendo,* that it was error for the trial judge to refuse to investigate sexually motivated racial prejudice, we find it to be harmless in light of the fact that the trial court sustained a demurrer to the charge of attempted rape.

do so, he did confront the veniremen with a question addressed to the issue of witness credibility.

THE COURT:

"Now, under our system all witnesses are equal, it makes no difference who that witness is, whether it is a policeman, a woman, a bank president, a street cleaner, a butcher or a baker, nobody has a right to be believed simply because of what he does in life or what he may own. What you do is you listen to that person testify on the stand and you fit in that which you hear with everything that you know about the case. You call upon all your life's experiences. You are using your common sense.

Only then do you decide what you will accept and what you will reject.

Now, is there anyone here who would have trouble with that concept, that all witnesses start out as equals? Anybody?"

Since none of the prospective jurors responded affirmatively to this question, we are confident in believing that the empanelled jury was free from any biases in favor of any particular class of witnesses. This contention cannot, therefore, be asserted meritoriously.

 Finally, as to appellant's last attack on the voir dire process, we are similarly unconvinced. Appellant submitted questions on the presumption of innocence and the privilege against self-incrimination which were not proposed to the potential jury. However, the trial judge committed no error in this regard. It is well-settled that voir dire questions encompassing legal principles such as the above are improper. *Commonwealth v. Kingsley*, 480 Pa. 560, 391 A.2d 1027 (1978); *Commonwealth v. England*, 474 Pa. 1, 375 A.2d 1292 (1977); *Commonwealth v. Bright*, 279 Pa.Super. 1, 420 A.2d 714 (1980). This is particularly so where, as in this case, the trial court did inquire about the veniremen's ability to accept and follow the law. The trial judge received no response when he queried,

"Now is there anyone here who for moral, religious or philosophical reasons could not take the law from the Court and apply it to the facts as you judge them to be?" Moreover, the trial judge instructed the jury both in his opening remarks and in his final charge on the areas raised by appellant in his proposed voir dire questions. We have long held that correct and thorough instructions to the jury obviate the need to cover those areas in the voir dire examination. *Commonwealth v. Perea*, 252 Pa.Super. 272, 381 A.2d 494 (1977). Thus, we find no abuse of discretion present in the instant case.

Judgment of sentence affirmed.