473 A.2d 128

**COMMONWEALTH of Pennsylvania**

**v.**

**James HAMM, Appellant.**

**COMMONWEALTH of Pennsylvania**

**v.**

**Raymond HAMM, Appellant.**

Superior Court of Pennsylvania.

Argued April 5, 1983.

Filed Feb. 17, 1984.

Petition for Allowance of Appeal Denied June 22, 1984.

402

404

406

Jeremiah F. Kane, Assistant Public Defender, West Chester, for James Hamm, appellant (at No. 1058).

Joseph S. Nescio, West Chester, for Raymond Hamm, appellant (at No. 1059).

Lee Ruslander, Assistant District Attorney, West Chester, for Commonwealth, appellee.

Before SPAETH, WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

James Hamm and Raymond Hamm, brothers, were tried together by jury, and each was convicted of two counts of burglary,[1] theft by unlawful taking,[2] receiving stolen property,[3] and criminal conspiracy.[4] In this consolidated direct appeal following the denial of post verdict motions and the imposition of sentence, James and Raymond challenge (1) the sufficiency of the evidence to sustain their convictions; (2) the trial court's refusal to sever their cases and try them separately; and (3) the trial court's refusal to grant a mistrial after the assistant district attorney had elicited a purported reference to prior criminal activity on their part. In addition, each brother raises a number of independent issues concerning rulings by the trial court and the conduct of the trial which we will consider seriatim.

"To evaluate the sufficiency of the evidence, we must view the evidence in the light most favorable to the Commonwealth as verdict winner, accept as true all the evidence and all reasonable inferences upon which, if believed, the jury could properly have based its verdict,

1. 18 Pa.C.S. § 3502.

2. 18 Pa.C.S. § 3921.

3. 18 Pa.C.S. § 3925.

4. 18 Pa.C.S. § 903.

and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the .weight to be accorded the evidence produced. The fact finder is free to believe all, part or none of the evidence." *Commonwealth v. Nunez*, 312 Pa.Super. 584, 586, 459 A.2d 376, 376–377 (1983), quoting *Commonwealth v. Tate*, 485 Pa. 180, 182, 401 A.2d 353, 354 (1979).

Thus viewed, the evidence discloses that on the late night of February 23 or the early morning of February 24, 1978, James Hamm, Budd Beane, and James Griffin broke into the Chester County home of Onah Ryan while Raymond Hamm waited in a parked car. They stole a chair, silver, porcelain, china and jewelry, some of which was later sold for $100. The proceeds were divided among the four conspirators. A few weeks later, on March 17, 1978, James Hamm, James Griffin, and James Dotson burglarized the Chester County home of John Gehron while Raymond Hamm again waited in the car. Stolen from the Gehron home were a coin collection, a watch, and several savings bonds. Proceeds from the sale of some of the stolen items were divided among the four men.

The Hamms do not dispute the occurrence of the Ryan and Gehron burglaries. They argue, rather, that the evidence was insufficient to establish their connection with the crimes because the only evidence thereof was the testimony of a co-conspirator, James Griffin, whose testimony contained several inconsistencies.[5] We disagree. It is well settled in Pennsylvania that the guilt or innocence of an accused may rest solely upon the uncorroborated testimony of an accomplice. *Commonwealth v. Goldblum*, 498 Pa. 455, 466, 447 A.2d 234, 240 (1982); *Commonwealth v.*

---

**5.** The burglaries remained unsolved for over a year until James Griffin led state police and Chester County detectives to the two homes and to a location in a wooded area where the chair stolen from the Ryan home had been left. Griffin was in custody on unrelated charges when he divulged his role in the Ryan and Gehron burglaries and implicated the Hamms.

*Hudson,* 489 Pa. 620, 628, 414 A.2d 1381, 1385 (1980); *Commonwealth v. Tervalon,* 463 Pa. 581, 593 n. 10, 345 A.2d 671, 677 n. 10 (1975); *Commonwealth v. Gonce,* 320 Pa.Super. 19, 26, 466 A.2d 1039, 1043 (1983); *Commonwealth v. Todt,* 318 Pa.Super. 55, 62–3, 464 A.2d 1226, 1230 (1983). Griffin did not waver in any way whatsoever in his implication of the Hamm brothers. Therefore, any inconsistencies in his trial testimony regarding details of the several burglaries were for the jury to resolve. See: *Commonwealth v. Donald Smith,* 502 Pa. 600, 606–07, 467 A.2d 1120, 1122 (1983); *Commonwealth v. Sample,* 321 Pa.Super. 457, 466, 468 A.2d 799, 803 (1983); *Commonwealth v. Curry,* 318 Pa.Super. 490, 495, 465 A.2d 660, 662 (1983); *Commonwealth v. Ruffin,* 317 Pa.Super. 126, 132, 463 A.2d 1117, 1120 (1983); *Commonwealth v. Newman,* 310 Pa.Super. 493, 496, 456 A.2d 1044, 1045 (1983).

Pursuant to a pre-trial request by the Commonwealth, the trial court consolidated for trial the charges arising against the Hamm brothers as a result of the Ryan and Gehron burglaries. Counsel had no objection to the consolidation of the two sets of burglary and related charges but opposed a joint trial for the two defendants. On appeal, both Hamms argue that they were denied a fair trial because their respective counsel were unable to provide adequate assistance because of differences of opinion regarding trial strategy. In addition, James Hamm argues that he was prejudiced when the cross-examination of Griffin by counsel for Raymond elicited an arguable reference to prior criminal activity on his part. Raymond Hamm contends that because James took the stand and testified in his own defense, while Raymond chose not to testify, he, Raymond, was prejudiced because the jury was able to infer his guilt from silence. These contentions are without merit.

"[Q]uestions of consolidation or severance of defendants for trial rest in the discretion of the trial judge and his rulings on such matters will not be disturbed on appeal except for manifest abuse of discretion." *Commonwealth v. Tolassi,* 258 Pa.Super. 194, 199, 392 A.2d 750, 753 (1978),

*aff'd,* 489 Pa. 41, 413 A.2d 1003 (1980). See: *Commonwealth v. Middleton,* 320 Pa.Super. 533, 551, 467 A.2d 841, 850 (1983); *Commonwealth v. Johnson,* 291 Pa.Super. 566, 581, 436 A.2d 645, 653 (1981). When the crimes charged arise from the same acts or series of acts and much of the same evidence is necessary or applicable to all defendants, a joint trial is "permissible, if not advisable." *Commonwealth v. Jackson,* 451 Pa. 462, 464, 303 A.2d 924, 925 (1973). See: *Commonwealth v. Kloiber,* 378 Pa. 412, 415, 106 A.2d 820, 823, *cert. denied,* 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954); *Commonwealth v. Fields,* 317 Pa.Super. 387, 398, 464 A.2d 375, 381 (1983); *Commonwealth v. Norman,* 272 Pa.Super. 300, 306, 415 A.2d 898, 901 (1979); *Commonwealth v. Weitkamp,* 255 Pa.Super. 305, 321, 386 A.2d 1014, 1022 (1978). Especially where a conspiracy to commit crime is alleged, the defendants should be tried together, "unless it can be shown that one or more of the defendants will be actually prejudiced by doing so." *Commonwealth v. Johnson, supra* 291 Pa.Super. at 582, 436 A.2d at 653. See: *Commonwealth v. Katsafanas,* 318 Pa.Super. 143, 157–58, 464 A.2d 1270, 1277–1278 (1983); *Commonwealth v. Tolassi, supra* 258 Pa.Super. at 200, 392 A.2d at 753.

■ The Commonwealth's case against the Hamms consisted in large measure of the testimony of James Griffin, who participated in the planning and commission of both burglaries and in the division of the spoils therefrom. Separate trials would have required the duplication of Griffin's testimony, as well as that of the investigating officers, the burglary victims, and James Boulanger, who bought some of the stolen property. Contrary to the Hamms' assertions, we find no evidence of actual prejudice in the record. The trial court was acutely aware of the separate rights and interests of the two defendants, and sought to protect them against prejudice because of the joint trial. Appellants' bald assertion that they were denied a fair trial because their attorneys were unable to agree upon trial strategy finds no support in the record.

 The record also belies James' argument that he was exposed to prejudicial testimony not otherwise admissible because of the consolidation. In response to questions posed on cross-examination of Griffin by Raymond's counsel concerning the witness' role in unrelated murder plots, Griffin stated that James Sampson, whom Griffin wanted killed and who, in fact, had been murdered, was a potential witness against James Hamm. We agree with the trial court that Griffin's statement was not prejudicial. At most, the statement informed the jury that a potential witness against James Hamm had been murdered and implied that the witness may have had something to do with it. James Hamm was neither implicated in the murder nor prejudiced by this cross-examination.

 Raymond Hamm was also not prejudiced by James' decision to testify while Raymond elected to remain silent. Although it may be said generally that joint trials should not be ordered where defendants assert antagonistic defenses, see: *Commonwealth v. Tolassi, supra,* 258 Pa.Superior Ct. at 200, 392 A.2d at 753, in this case there was no inconsistency whatsoever in the defenses presented by the co-defendants. James explicitly denied participation in the burglaries. Raymond also denied participation. See and compare: *Commonwealth v. Hartzell,* 320 Pa.Super. 249, 467 A.2d 22 (1983). Counsel for both defendants attacked the credibility of Griffin and sought to impeach him on the basis that he had sought leniency in return for his testimony.[6] No comments were made concerning Raymond's silence, and no inference of guilt on that basis was permitted.

 During direct examination, Griffin stated that he and the other conspirators took gloves with them to the Gehron home. When the prosecutor asked why, Griffin responded that "We usually wore gloves to never leave fingerprints." Both appellants contend that the trial court erred in denying motions for mistrial made following this

6. It was suggested at trial that Griffin had been involved in a number of murder plots and became a Commonwealth witness in unrelated cases in return for immunity and protection.

remark. We disagree. The declaration of a mistrial is a matter committed to the discretion of the trial court, and the court's decision will not be disturbed on appeal absent a "flagrant abuse of discretion." *Commonwealth v. Potts,* 314 Pa.Super. 256, 274, 460 A.2d 1127, 1136 (1983). See: *Commonwealth v. Dumas,* 299 Pa.Super. 335, 344, 445 A.2d 782, 787 (1982); *Commonwealth v. Stokes,* 279 Pa.Super. 361, 371, 421 A.2d 240, 245 (1980); *Commonwealth v. Walley,* 262 Pa.Super. 496, 505, 396 A.2d 1280, 1285 (1978). Purported references to a defendant's prior criminal activity will not be deemed prejudicial unless the remarks convey to the jury, either expressly or by implication, the fact that the defendant committed a prior criminal offense. *Commonwealth v. Starks,* 484 Pa. 399, 408, 399 A.2d 353, 357 (1979) (plurality opinion); *Commonwealth v. Irwin,* 475 Pa. 616, 622, 381 A.2d 444, 447 (1977); *Commonwealth v. Potts, supra,* 314 Pa.Super. at 274–75, 460 A.2d at 1136; *Commonwealth v. Carney,* 310 Pa.Super. 549, 552, 456 A.2d 1072, 1074 (1983); *Commonwealth v. Bowermaster,* 297 Pa.Super. 444, 450–451, 444 A.2d 115, 118 (1982).

■■■ The Hamms were being tried for two separate burglaries, both of which had been committed jointly with Griffin. Not only was the prosecutor's question about the use of the gloves directed only to the night of the Gehron burglary, but Griffin's answer using the pronoun "we" was a solitary and vague reference to an undefined group. Inclusion of either James or Raymond in that group could not reasonably be inferred, particularly in view of the fact that Griffin had admitted to being involved personally in several hundred burglaries.

### Appeal of James Hamm

James Hamm raises two issues not raised by his brother: (1) whether he was tried in violation of Pa.R.Crim.P. 1100, and (2) whether the trial court erred in refusing to allow counsel to conduct voir dire personally or, in the alternative, by refusing to ask prospective jurors a number of questions proposed by his counsel.

The criminal complaints against the Hamm brothers were signed on March 30, 1979. The Rule 1100 run date, therefore, was September 26, 1979. On July 30, 1979, the Commonwealth requested that the cases against James Hamm, Raymond Hamm and James Dotson[7] be tried together and announced that it was ready to proceed. James Hamm's attorney, a public defender, was out of town and for personal reasons was not available on that day. Raymond Hamm and James Dotson were also represented by public defenders, who requested a continuance of the trial. When Raymond's attorney moved for a continuance, he told the court:

"Sir, I would be making the same application on behalf of Mr. Kalmbach for James. Although I am not his counsel specifically at this time, because of the fact that we are working together and it is the Public Defender's Office representing both, I am prepared to ask for a continuance on both matters."[8]

The District Attorney, to avoid Rule 1100 problems, requested written waivers of the rule's requirements. Counsel for Raymond Hamm and James Dotson obtained waivers from their clients and delivered them to the District Attorney. Upon the filing thereof, the trial was continued and relisted by agreement of counsel for October 9, 1979.

The day after Mr. Novak, Raymond Hamm's attorney, and Mr. Reed, James Dotson's attorney, had requested continuances for the three defendants, Novak informed Kalmbach that the Commonwealth intended to try the defendants together and that a continuance of all cases had been requested by the defense. He also told Kalmbach that the Commonwealth expected a waiver from his client,

7. James Dotson, a co-conspirator in the Gehron burglary and a co-defendant of James Hamm in other unrelated cases, was originally part of the same proceedings, but he was tried separately.

8. The transcript of the July 30, 1979 proceeding is not part of the record sent to this Court. However, counsel for all parties as well as the trial court read from a copy of it at a pre-trial hearing, and the court quoted from it in its opinion without correction by either counsel. We rely upon these reproduced excerpts of that hearing.

414

James Hamm, in connection with the request for continu-ance. Several requests for a waiver were subsequently made upon Kalmbach by the District Attorney, but Kalmbach ignored them. When the Commonwealth did not receive the anticipated waiver from James Hamm, it filed a timely petition to extend the time for commencing trial. James Hamm filed an answer and moved to dismiss the charges. The trial court, after hearing, granted an extension until October 19. Trial commenced on October 10.

In *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976), the Supreme Court held:

"[T]he trial court may grant an extension under rule 1100(c) only upon a record showing: (1) the 'due diligence' of the prosecution, and (2) certification that trial is scheduled for the earliest date consistent with the court's business; provided that if the delay is due to the court's inability to try the defendant within the prescribed period, the record must also show the causes of the court delay and the reasons why the delay cannot be avoided."

*Id.*, 469 Pa. at 222, 364 A.2d at 1349–1350. See: *Commonwealth v. Kite*, 321 Pa.Super. 411, 415, 468 A.2d 775, 777 (1983); *Commonwealth v. Jones*, 314 Pa.Super. 515, 521, 461 A.2d 276, 279 (1983). The sole issue before this Court in the instant case is whether the trial court properly held that the Commonwealth had met its burden of proving due diligence in bringing Hamm to trial within the mandatory period.[9] We agree that the Commonwealth presented evidence sufficient to support the granting of an extension.

In its petition to extend, the Commonwealth alleged that it had been unable to bring James Hamm to trial within the mandatory period because of continuances requested by Hamm's co-defendants. Periods of delay caused by co-defendants and/or their counsel may not normally be excluded from the computation of the prescribed period

9. Because the outcome of this case turns upon the propriety of the extension granted under Rule 1100(c), we find it unnecessary to determine whether the Commonwealth was entitled to exclude part or all of the period following the July 30 listing under Rule 1100(d).

under Rule 1100(d). *Commonwealth v. Hagans*, 482 Pa. 572, 577, 394 A.2d 470, 472 (1978); *Commonwealth v. Thomas*, 266 Pa.Super. 381, 384, 404 A.2d 1340, 1342 (1979); *Commonwealth v. Clarence Robinson*, 263 Pa.Super. 330, 332, 397 A.2d 1233, 1234 (1979); *Commonwealth v. Edward Brown*, 251 Pa.Super. 179, 183, 380 A.2d 436, 438 (1977). However, such delays may constitute sufficient grounds for an extension of time for trial under Rule 1100(c). See: *Commonwealth v. Hagans, supra*, 482 Pa. at 577, 394 A.2d at 472; *Commonwealth v. Kite, supra*, 321 Pa.Super. at 415, 468 A.2d at 777; *Commonwealth v. Brett*, 262 Pa.Super. 326, 330, 396 A.2d 777, 780 (1978); *Commonwealth v. Edward Brown, supra* 251 Pa.Super. at 183, 380 A.2d at 438; *Commonwealth v. Walter Brown*, 242 Pa.Super. 397, 401–402, 364 A.2d 330, 332–333 (1976).

 In the instant case, there was no basis for determining that the Commonwealth had failed to exercise due diligence. It was prepared to proceed. The case was not tried prior to the original run date solely because of continuances requested by counsel for co-defendants. They represented to the Court and to the District Attorney that counsel for James Hamm was joining their request for postponement and had no objection to an October trial date. Whether counsel for the co-defendants had express authority to make such representations is not the issue. The fact is that the representations were made, and because they were made the trial was continued and agreement was reached to reschedule the trial for October. Under such circumstances, the delay cannot be attributed to a lack of due diligence by the Commonwealth.

 It is true, as appellant argues, that a criminal defendant has no duty to bring himself to trial or remind the Commonwealth that time is running out. See: *Commonwealth v. Manley*, 282 Pa.Super. 376, 383 n. 6, 422 A.2d 1340, 1343 n. 6 (1980); *Commonwealth v. Garrison*, 277 Pa.Super. 18, 25, 419 A.2d 638, 642 (1980); *Commonwealth v. Walter Brown, supra* 242 Pa.Super. at 401, 364 A.2d at 332; *Commonwealth v. Hagans*, 242 Pa.Super. 393, 396–

397, 364 A.2d 328, 330 (1976), *aff'd,* 482 Pa. 572, 574, 394 A.2d 470 (1978). This does not mean, however, that the Commonwealth should not be granted an extension where a joint trial has been continued upon request of a co-defendant and trial cannot be achieved within the mandatory period because of the delay caused thereby.

 In *Commonwealth v. Genovese,* 493 Pa. 65, 425 A.2d 367 (1981), the Supreme Court said:.

"Rule 1100 'serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society, *Commonwealth v. Brocklehurst,* 491 Pa. 151, 153–154, 420 A.2d 385, 387 (1980); *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972). In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. *Commonwealth v. Johnson,* 487 Pa. 197 n. 4, 409 A.2d 308 n. 4 (1980). The administrative mandate of Rule 1100 certainly was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth."

*Id.,* 493 Pa. at 69–70, 425 A.2d at 369–370. See also: *Commonwealth v. Dunbar,* 503 Pa. 590, 599, 470 A.2d 74, 78 (1983). "The public ... has an important 'interest in having the guilt or innocence of the accused determined. Indeed, the criminal justice system owes society the duty not to abort trials, but rather to conduct proceedings expeditiously.' " *Commonwealth v. Crowley,* 502 Pa. 393, 466 A.2d 1009, 1012 (1983) (citation omitted). This requires that Rule 1100 be construed reasonably so as to achieve an expeditious determination of criminal charges and not hypertechnically to abort trials thereof.

 There is no merit in appellant's argument that the trial court's refusal to allow counsel to conduct individual voir dire violated appellant's right to the effective assistance of counsel. The trial judge could himself conduct the

voir dire examination. This is expressly authorized by Pa.R.Crim.P. 1106(d), which provides in pertinent part that the trial judge may permit either counsel to conduct voir dire or may "itself conduct the examination." In noncapital cases, the method of examining prospective jurors—whether individually or collectively—is discretionary with the court. See: Pa.R.Crim.P. 1106(e); *Commonwealth v. Mayo*, 272 Pa.Super. 115, 119, 414 A.2d 696, 698–699 (1979); *Commonwealth v. Gore*, 262 Pa.Super. 540, 557, 396 A.2d 1302, 1310 (1978); *Commonwealth v. Howard*, 248 Pa.Super. 246, 251, 375 A.2d 79, 82 (1977). The sole purpose of voir dire is to provide the accused with a competent, fair, impartial and unprejudiced jury. *Commonwealth v. Christian*, 480 Pa. 131, 139, 389 A.2d 545, 549 (1978) (plurality opinion); *Commonwealth v. England*, 474 Pa. 1, 6, 375 A.2d 1292, 1295 (1977); *Commonwealth v. Futch*, 469 Pa. 422, 426, 366 A.2d 246, 248 (1976); *Commonwealth v. Richmond*, 316 Pa.Super. 304, 307, 462 A.2d 1362, 1363 (1983); *Commonwealth v. Short*, 278 Pa.Super. 581, 590, 420 A.2d 694, 698 (1980); *Commonwealth v. Fulton*, 271 Pa.Super. 430, 432, 413 A.2d 742, 743 (1979). James Hamm does not suggest that the court's handling of voir dire impaired his or his counsel's ability to select a fair and impartial jury, and the record discloses no prejudice whatsoever. We reject Hamm's invitation to find the denial of his request prima facie prejudicial.

 We also find no merit in the related contention that James Hamm is entitled to a new trial because the Court refused to submit the following proposed questions to the prospective jurors:

"The judge will tell you that the Commonwealth has the burden of proof and must prove its case beyond a reasonable doubt. If, during your ultimate deliberation, you *had* such a doubt, would you have any hesitation in acquitting the defendant?

"Even though you will hear the Commonwealth's evidence first, will you keep an open mind until all the

evidence has been presented and the judge has instructed you on the law?"

The trial judge has broad discretion regarding the scope of voir dire examination; absent a showing that the court abused its discretion, its rulings will not be reversed. *Commonwealth v. Futch, supra* 469 Pa. at 427, 366 A.2d at 248; *Commonwealth v. Layman,* 290 Pa.Super. 244, 253, 434 A.2d 735, 739 (1981); *Commonwealth v. Boone,* 286 Pa.Super. 384, 388, 428 A.2d 1382, 1384 (1981). Moreover, voir dire questions encompassing legal principles and the jury's understanding thereof are improper. See: *Commonwealth v. Kingsley,* 480 Pa. 560, 573, 391 A.2d 1027, 1033 (1978); *Commonwealth v. Richmond, supra,* 316 Pa.Super. at 310, 462 A.2d at 1365; *Commonwealth v. Bright,* 279 Pa.Super. 1, 8, 420 A.2d 714, 717 (1980); *Commonwealth v. Everett,* 262 Pa.Super. 61, 64–65, 396 A.2d 645, 646 (1978); *Commonwealth v. Perea,* 252 Pa.Super. 272, 277, 381 A.2d 494, 497 (1977).

### Appeal of Raymond Hamm

Raymond Hamm argues that the trial court erred (1) in denying his motion for a change of venue; (2) in refusing his motion for a mistrial when the prosecutor referred to the members of the jury as "Mr. and Mrs. law and order"; and (3) in limiting all defendants to a single set of peremptory challenges. Raymond Hamm also argues a violation of his constitutional right to a speedy trial because of delay in sentencing. There is no merit in these issues.

Raymond Hamm's request for a change of venue was based on the fact that five years before his trial, a brother had been arrested, tried and convicted for the murder of two Chester County policemen.[10] Whether to grant a change of venue is a matter committed to the sound discretion of the trial court, and its decision will not be disturbed absent an abuse of that discretion. *Common-*

10. The trial took place in Dauphin County after a change of venue had been ordered. The facts of the case are reported in *Commonwealth v. Hamm,* 474 Pa. 487, 378 A.2d 1219 (1977).

*wealth v. Roberts,* 496 Pa. 428, 432, 437 A.2d 948, 950 (1981); *Commonwealth v. Daugherty,* 493 Pa. 273, 276, 426 A.2d 104, 105 (1981); *Commonwealth v. Keeler,* 302 Pa.Super. 324, 328, 448 A.2d 1064, 1065–1066 (1982); *Commonwealth v. Ralph Smith,* 289 Pa.Super. 356, 364, 433 A.2d 489, 493 (1981). There was no abuse of discretion in refusing to change venue because of notoriety attaching to charges against a relative five years before. See: *Commonwealth v. Bachert,* 499 Pa. 398, 453 A.2d 931 (1982), *cert. denied,* 460 U.S. 1043, 103 S.Ct. 1440, 75 L.Ed.2d 797 (1983); *Commonwealth v. Melvin Robinson,* 494 Pa. 372, 431 A.2d 901 (1981); *Commonwealth v. Rigler,* 488 Pa. 441, 412 A.2d 846 (1980), *cert. denied,* 451 U.S. 1016, 101 S.Ct. 3004, 69 L.Ed.2d 387 (1981); *Commonwealth v. Casper,* 481 Pa. 143, 392 A.2d 287 (1978); *Commonwealth v. Weakland,* 273 Pa.Super. 361, 417 A.2d 690 (1979).

Counsel for Raymond Hamm made a pre-trial request that each defendant be given the statutorily mandated, seven peremptory challenges. The court denied this request and, instead, allowed an aggregate of seven challenges between the two defendants. Raymond Hamm contends that the court's ruling denied him equal protection of the law.

It had been provided by statute at the time of the instant trial that in noncapital felony cases the Commonwealth and the accused were each entitled to seven peremptory challenges. Act of October 7, 1976, P.L. 1089, No. 217, 19 P.S. § 811(a) (repealed). However, in trials involving more than one defendant, the defendants were entitled only to the maximum number any one of them would have received if tried separately. Act of March 31, 1860, P.L. 427, No. 375, § 40, 19 P.S. § 785.[11]

There is no constitutional requirement that an accused be permitted to exercise peremptory challenges.

---

11. Although this statute had been repealed by JARA when trial took place, it remained part of the common law of this Commonwealth pending promulgation of Pa.R.Crim.P. 1126. See: 42 Pa.C.S. § 20003(b).

See: *Commonwealth v. Davis*, 267 Pa.Super. 370, 376, 406 A.2d 1087, 1089–1090 (1979); *Commonwealth v. Kubacki*, 208 Pa.Super. 523, 528, 224 A.2d 80, 83 (1966); *Commonwealth v. Cohen*, 203 Pa.Super. 34, 69, 199 A.2d 139, 156, *cert. denied*, 379 U.S. 902, 85 S.Ct. 191, 13 L.Ed.2d 176 (1964). Consequently, the statutory limitation imposed upon the number of peremptory challenges available to a defendant did not violate due process. Similarly, it was not a violation of due process to require that peremptory challenges allowed to the defense be shared by and between joint defendants.

Appellant's contention that a different, more liberal right to exercise peremptory challenges available to joint defendants in civil trials [12] rendered the greater restriction on peremptory challenges in criminal cases a violation of equal protection is lacking in merit.

The hallmark of an equal protection violation is a classification by government which results in unequal treatment of persons similarly situated. See generally: *Kaelin v. Warden*, 334 F.Supp. 602, 608 (E.D.Pa.1971); *Commonwealth v. Kramer*, 474 Pa. 341, 346, 378 A.2d 824, 826 (1977); *Commonwealth v. Webster*, 462 Pa. 125, 130, 337 A.2d 914, 917, *cert. denied*, 423 U.S. 898, 96 S.Ct. 201, 46 L.Ed.2d 131 (1975). Joint defendants in criminal cases are not situated similarly to joint defendants in civil cases. In criminal cases, the other party and principal adversary is usually the Commonwealth. In civil cases, however, the interests of a defendant may as readily be in conflict with the interests of other defendants as they are in conflict with the interests of the plaintiff. To recognize this difference and to allow a court in the exercise of its discretion in civil cases to remove potential prejudice in the sharing of a lesser number of peremptory challenges is entirely proper. Principles of equal protection do not command that peremptory challenges in criminal cases be precisely the same in

12. In civil cases, the trial court may, in the exercise of a sound judicial discretion, grant defendants additional challenges where their interests are diverse and antagonistic. See: Pa.R.C.P. 221.

number as those in civil trials or that they be divided in precisely the same manner between joint defendants.

The Pennsylvania statutory requirement pertaining to the number of peremptory challenges to prospective jurors in joint criminal trials has withstood repeated attacks of varying types and degrees. See: *Commonwealth v. Weeden,* 457 Pa. 436, 322 A.2d 343 (1974), *cert. denied,* 420 U.S. 937, 95 S.Ct. 1147, 43 L.Ed.2d 414 (1975); *Commonwealth v. Norman, supra; Commonwealth v. Phillips,* 267 Pa.Super. 526, 407 A.2d 35 (1979); *Commonwealth v. Kubacki, supra; Commonwealth v. Vecchiolli,* 208 Pa.Super. 483, 224 A.2d 96 (1966); *Commonwealth v. Cohen, supra; Commonwealth v. Giambrone,* 183 Pa.Super. 283, 130 A.2d 254 (1957); *Commonwealth v. Antico,* 146 Pa.Super. 293, 22 A.2d 204 (1941). See also: Anno., Jury: Number of Peremptory Challenges Allowed in Criminal Case Where There Are Two or More Defendants Tried Together, 21 A.L.R.3d 725 (1968). There is no good reason for holding the requirement invalid in these proceedings.[13]

 During summation, the prosecuting attorney told the jurors that each of them was "truly Mr. and Mrs. law and order." A motion for a mistrial by counsel for Raymond Hamm was denied by the trial court. He now contends that this was error. "[C]omments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the

**13.** Present practice is governed by Pa.R.Crim.P. 1126 which provides in subsection (a)(2) that in the case of a noncapital felony, a single defendant and the Commonwealth are each entitled to seven peremptory challenges. In subsection (b), Rule 1126 provides, in part, that joint defendants must divide among themselves the highest number of peremptory challenges any one of them would have received if tried separately, provided that each defendant must have at least two challenges. Rule 1126(b)(2) expressly gives the trial court discretion to increase the number of challenges to which each defendant shall be entitled. See generally: *Commonwealth v. Smith,* 321 Pa.Super. 170, 467 A.2d 1307 (1983).

evidence objectively and render a true verdict." *Commonwealth v. Tabron,* 502 Pa. 154, 160, 465 A.2d 637, 639–640 (1983) (citations omitted). See: *Commonwealth v. Anderson,* 501 Pa. 275, 282, 461 A.2d 208, 211 (1983). The remark in question was not improper. A prosecutor, it has been held, is permitted within proper limits to state to a jury its role in the achievement of law and order. See: *Commonwealth v. Tabron, supra,* 502 Pa. at 160–61, 465 A.2d at 640; *Commonwealth v. Gwaltney,* 497 Pa. 505, 511, 442 A.2d 236, 239 (1982); *Commonwealth v. Nesbitt,* 276 Pa.Super. 1, 12, 419 A.2d 64, 70 (1980); *Commonwealth v. Boone,* 287 Pa.Super. 1, 8, 429 A.2d 689, 692 (1981); *Commonwealth v. Youngkin,* 285 Pa.Super. 417, 434, 427 A.2d 1356, 1365 (1981); *Commonwealth v. Lee,* 261 Pa.Super. 48, 52, 395 A.2d 935, 938 (1978).

 Raymond Hamm also contends that he should be discharged because a twenty-nine month delay in imposing sentence following conviction constituted a violation of his constitutional right to a speedy trial. This issue was not raised at the time of sentencing, even though the sentencing court gave appellant the right to speak. It was raised for the first time in a P.C.H.A. petition which Raymond Hamm filed after the instant direct appeal had been taken. That P.C.H.A. petition remains presently undecided. This issue, therefore, is not properly before us. Similarly, the averment that trial counsel was ineffective for failing to permit Raymond Hamm to call this delay to the attention of the sentencing court can best be determined in the P.C.H.A. proceedings still pending in the court in Chester County.

Because we find no merit in the issues properly raised by appellants in their direct appeal, the judgments of sentence will be affirmed.

Affirmed.

SPAETH, J., concurs in the result.