J-S61044-17

2018 PA Super 93

COMMONWEALTH OF PENNSYLVANIA,  :  IN THE SUPERIOR COURT OF
                                :  PENNSYLVANIA
                      Appellee  :
                                :
           v.                   :
                                :
HILLARD BETHEA,                 :
                                :
                     Appellant  :  No. 3454 EDA 2014

Appeal from the Judgment of Sentence November 21, 2014
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0005123-2008

BEFORE:  LAZARUS, J., RANSOM, J., and PLATT, J.[*]

OPINION BY PLATT, J.:                         **FILED APRIL 23, 2018**

Appellant, Hillard Bethea, appeals from the judgment of sentence imposed following his jury conviction of rape, aggravated assault, and related crimes. He claims the court erred in denying his pre-trial motion to dismiss pursuant to Pennsylvania Rule of Criminal Procedure 600(A)(2)(e). Appellant also challenges the trial court's grant of the Commonwealth's motion *in limine* to preclude his counsel's continued reference to him as "an innocent man" during *voir dire*. We affirm.

We derive the facts of the case from the trial court's opinion and our independent review of the record. (**See** Trial Court Opinion, 11/23/15, at 4-6).

_____

[*] Retired Senior Judge assigned to the Superior Court.

The underlying facts are not in direct dispute in this appeal.[1]  During the early morning hours of Thursday, March 13, 2008, Appellant left his home in Elkins Park, Montgomery County and drove a stolen van into the Kensington section of Northeast Philadelphia.[2]  There, he solicited a prostitute, the victim.  She agreed to provide a combination of oral and vaginal sex (with a condom), for forty dollars.[3]  (**See** N.T. Trial, 11/03/10, at 6).[4]  The two drove off in the stolen van, and after stopping at a store for Appellant to buy the condom, they went to a nearby parking lot.

---

[1] At trial, however, Appellant and the victim presented diametrically opposed versions of the incident.  The victim testified that she was a prostitute brutally attacked by an aggressive, violent first-time customer.  Appellant claimed he already knew the victim as the relative of an acquaintance.  He testified that she lured him with the offer of sex into an armed robbery by a "Spanish dude" and an African American.  (N.T. Trial, 1/29/14, at 90).  When he fended them off, Appellant claimed, the victim came to their assistance, and he had to fight her back in self-defense.  (**See also, generally, id.** at 69-192).

[2] At the time of these crimes, Appellant was apparently on parole and restricted to home confinement at his Mother's house for a prior unrelated conviction of vehicular homicide.

[3] At the first trial, the victim admitted that she initially lied to the police detectives of the Special Victims Unit, reporting that she had only accepted a free ride from Appellant, on her way home after visiting a girlfriend.  (**See** N.T. Trial, 11/03/10, at 30-32).  The victim claimed she lied because she was embarrassed about being a prostitute and fearful of arrest.  (**See** N.T. Trial, 11/04/10, at 7).

[4] Several of the trial transcripts are inconsistently dated, *e.g.*, as both November 3, 2010 and November 3, 2013.  Where the dates are ambiguous, we have tried to adopt the date that seems most logical and probable in context.

While having sex in the back of the van, Appellant removed the condom he was wearing and proceeded to urinate on the victim as well as continue vaginal intercourse, now unprotected. The victim protested these and other related acts and began to fight with Appellant. He punched her face with his fists. (**See id.** at 14-15). When they heard another car start up, the victim tried to get the attention of the other motorist by kicking and yelling loudly. Appellant tied a rope around her neck, knotted it, and pulled it from both sides, choking her. (**See id.** at 17-18).

Appellant then ran to the front of the van and began to drive way. The victim followed him to the front of the van. She tried to get out, but the doors were locked. While driving erratically, Appellant pulled out a thirteen-inch serrated commercial grade kitchen knife and began stabbing at the victim over his right shoulder.[5] She suffered stab wounds to her left leg, thigh, calf, buttock, and palm, right arm, and face. Color photographs introduced by the Commonwealth as trial exhibits confirm that the stab injuries were numerous, deep, and severe. (**See** Commonwealth Exhibits C-9 through C-27; **see also** N.T. Trial, 11/03/10, at 20-22; 29-30). The victim testified that she thought she was going to die. (**See** N.T. Trial, 11/03/10, at 21; **see also** N.T. Trial, 1/28/14, at 14-15).

---

[5] DNA testing later confirmed that blood found on the knife retrieved by the police matched the DNA of the victim.

Then the victim saw a ballpeen hammer on the floor of the van. She picked it up and began hitting Appellant with it in the area of his right eye, until he crashed the van into a pole. (*See* N.T. Trial, 11/03/10, at 22-23).[6] The victim, naked except for socks and sneakers, tried to retrieve her clothes, but Appellant would not let her, punching her in the face. He drove off, leaving her behind, naked and bleeding.

Onlookers called the police, who found the van in an apartment parking lot and confirmed it was stolen. They then traced Appellant through the identification he had left in his wallet on the floor of the van. The victim also identified Appellant from a photo array. Cheltenham police arrested Appellant at his home in Elkins Park on a warrant from the Philadelphia police.

On November 1, 2010, Appellant waived his right to a jury and proceeded to a bench trial. In the middle of the trial, on November 4, 2010, the parties agreed to a negotiated open plea in which Appellant would plead guilty to aggravated assault, possession of an instrument of crime, and unauthorized use of an automobile. In return, the Commonwealth agreed to withdraw the charges of attempted murder, rape, and aggravated indecent assault.

_____

[6] Notably, Appellant lost his right eye as a result of the confrontation. (*See* N.T. Trial, 11/04/10, at 16; N.T. Trial, 1/29/14, at 125).

On February 15, 2011, the trial court imposed an aggregate sentence of not less than seven nor more than twenty years of incarceration in a state correctional institution. Appellant was extremely upset, and had to be subdued by the sheriff staff.[7] Appellant filed a *pro se* motion to withdraw his plea of guilty on February 24, 2011. He claimed, *inter alia*, that he had not been properly informed of the maximum possible sentence, and in fact, had been assured of a lighter sentence, the sixty-four months' imprisonment. The trial court denied the motion to withdraw the plea. Appellant appealed.

On July 11, 2012, a predecessor panel of this Court, noting discrepancies in the maximum length of sentence stated in the written and oral guilty plea colloquies, vacated Appellant's judgment of sentence and remanded for trial. (**See Commonwealth v. Bethea**, 55 A.3d 131 (Pa. Super. 2012) (unpublished memorandum)).[8]

_____

[7] Sentencing proceedings were delayed due to the emergency. Appellant confronted his attorney, and apparently threw his artificial eye (ocular prosthesis) across the courtroom. (**See** Trial Ct. Op., at 2 n.1; **see also** N.T. Sentencing, 2/15/11, at 40-41). It is not clear from the transcript whether Appellant physically attacked counsel or only threatened him. Appellant claimed he was told he would get no more than sixty-four months' imprisonment. (**See** N.T. Sentencing, 2/15/11, at 38-41). Counsel replied that he had only "hoped" Appellant would get sixty-four months. (**Id.** at 38).

[8] Both the written and the oral colloquies incorrectly indicated that Appellant faced a maximum sentence of thirteen and a half years of incarceration. The predecessor panel rejected the trial court's reasoning that other statements in the colloquies both directly and by inference correctly advised Appellant of the possibility of a much higher sentence. The trial court judge

*(Footnote Continued Next Page)*

After remand, the trial court held a hearing on various motions, on May 2, 2013. These included a motion to dismiss pursuant to Pa.R.Crim.P. 600(A)(2)(e) and (D) for lack of a prompt trial, and a motion *in limine* to preclude reference to prior convictions. Appellant also filed a motion for recusal. After a lengthy discussion between the trial court judge, counsel, and Appellant, he refused a renewed plea offer from the Commonwealth and opted for a jury trial.[9] (*See* N.T. Motions Hearing, 5/02/13, at 18). The judge declined to recuse herself, noting that in a jury trial the jury, not she, would be the finder of fact. (*See id.* at 48).

It bears noting, in light of Appellant's Rule 600 claims, that the trial court judge offered a trial date on the following Monday, (*see id.* at 13) ("So we can set it for trial for Monday, if you want"), which would have been May 6, 2013; or a month later, on June 3 (*see id.* at 49). Newly appointed defense counsel declined, asking for more time to review discovery. (*See id.* at 50-51).

*(Footnote Continued)* _____

accepted responsibility for the misstatements about maximum sentencing contained in the colloquies. (*See* N.T. Motions Hearing, 5/02/13, at 21-22) ("It's my mistake that I didn't see it"; *see also id.* at 41).

[9] In an apparent effort to avoid a claim of double jeopardy, after protracted discussion, at the suggestion of the trial court, defense counsel moved for a mistrial (of the prior bench trial), which the court granted with the understanding that all double jeopardy arguments were waived. (*See* Trial Ct. Op., at 2; *see also* N.T Motions Hearing, 5/02/13, at 47-48). The trial court judge also denied a motion for recusal. (*See* N.T. Motions Hearing, 5/02/13, at 48).

The trial court eventually set a tentative trial date of June 3 anyway, while recognizing that other trials might require a postponement. In fact, the June 3 trial did not occur. Because of other scheduled trials, the next available trial date was in January of 2014.

On January 27, 2014, the trial court began *voir dire*. During *voir dire*, defense counsel introduced Appellant as "an innocent man." The Commonwealth made an oral motion *in limine* to preclude defense counsel from further reference to Appellant as an innocent man during *voir dire.* Defense counsel protested that the grant of the motion infringed on Appellant's constitutional presumption of innocence. The trial court granted the Commonwealth's motion*.*

On February 4, 2014, a jury convicted Appellant of aggravated assault—attempt to cause serious bodily injury; aggravated assault—causing serious bodily injury; rape; possession of an instrument of crime; and unauthorized use of a motor vehicle.[10]  (**See** Verdict Slip, 2/04/14).

The trial court deferred sentencing several times for the completion of a pre-sentence investigation report as well as an assessment by the Sexual Offenders Assessment Board. On November 21, 2014, the trial court found Appellant to be a sexually violent predator (SVP), requiring lifetime

_____

[10] The jury acquitted Appellant of attempted murder.

registration,[11] and sentenced him to an aggregate term of not less than

twenty-three and a half years nor more than forty-seven years of

_____

[11] It bears noting that the trial court adjudicated Appellant to be a Tier III SVP under Megan's Law, **not** the Sex Offender Registration and Notification Act, 42 Pa.C.S.A. §§ 9799.10–9799.41 (SORNA). The sentencing proceeding and SOAB assessment are not included in the record before us. Nevertheless, the relevant docket entry and sentencing order confirm the trial court's reliance. (**See** docket entry at 11/21/14; **see also** Order of Sentence, 11/21/2014, at 1; Order, 12/03/14; Trial Ct. Op., 11/23/14, at 3). Briefly summarized for purposes of our review, Megan's Law I was enacted on October 24, 1995 and became effective 180 days later. Megan's Law II was enacted on May 10, 2000 after Megan's Law I was held unconstitutional in **Commonwealth v. Williams**, 733 A.2d 593 (Pa. 1999). Some parts of Megan's Law II were held unconstitutional in **Commonwealth v. Gomer Williams**, 832 A.2d 962 (Pa. 2003). The General Assembly responded by enacting Megan's Law III on November 24, 2004. Megan's Law III was also struck down by our Supreme Court, for violating the single subject rule of Article III, Section 3 of the Pennsylvania Constitution. **See Commonwealth v. Neiman**, 84 A.3d 603, 616 (Pa. 2013). The United States Congress expanded the public notification requirements of state sexual offender registries in the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§ 16901–16945. The Pennsylvania General Assembly responded by passing SORNA, with the stated purpose of "bring[ing] the Commonwealth into substantial compliance with the Adam Walsh Child Protection and Safety Act of 2006." 42 Pa.C.S.A. § 9799.10(1).

We recognize that recently, in **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017) (Opinion Announcing the Judgment of the Court), our Supreme Court decided that SORNA, as applied retroactively to Muniz, was unconstitutional under *the ex post facto* clauses of the United States and Pennsylvania constitutions. **See id.** at 1192. In reliance on the holding in **Muniz**, a panel of this Court subsequently decided that registration requirements under SORNA are unconstitutional. **See Commonwealth v. Butler**, No. 1225 WDA 2016 (Pa. Super. Oct. 31, 2017). However, since the trial court here did not rely on SORNA, we conclude that neither **Muniz** nor **Butler** apply to nor control our disposition. Moreover, our General Assembly has provided that: "To the extent practicable and consistent with the requirements of the Adam Walsh Child Protection and Safety Act of 2006,
*(Footnote Continued Next Page)*

incarceration in a state correctional institution. (**See** Order of Sentence, 11/21/14).[12] Appellant timely appealed, on December 7, 2014.

After receipt of trial transcripts, Appellant timely filed a statement of errors. The trial court filed an opinion on November 23, 2015. **See** Pa.R.A.P. 1925.

Appellant raises two questions on appeal:

> 1) Whether the [t]rial [c]ourt erred by denying [A]ppellant's motion to dismiss pursuant to Rule 600(A)(2)(e) of the Pa. Rule[s] of Criminal Procedure?
>
> 2) Whether the [t]rial [c]ourt erred by prohibiting counsel for [A]ppellant from referring to [Appellant] as an innocent man during *voir dire*?

(Appellant's Brief, at 4).

Appellant first contends that the trial court erroneously added thirty-two days to the adjusted run date of January 19, 2014, because that period was not attributed to the defense on the record. (**See id.** at 13-14). He also argues that the court did not certify on the record that its earliest

---

*(Footnote Continued)* ————————————

this subchapter shall be construed to maintain existing procedures regarding registration of sexual offenders who are subject to the criminal justice system of this Commonwealth." 42 Pa.C.S.A. § 9799.10(4). Finally, we take judicial notice that nothing in the record before us suggests that Appellant received an enhanced sentence based on an SVP designation, or that his tier assignment (Tier III) would change one way or the other based on the **Muniz/Butler** rationale.

[12] The trial court also filed a formal order finding Appellant to be a sexually violent predator on December 3, 2014.

available jury trial date was January 27, 2014. He maintains that the trial court erroneously extended the adjusted run date to February 20, 2014. He assumes the correct adjusted run date was still January 19, 2014. From this assumption, Appellant posits that he was not brought to trial within the time limits imposed by Rule 600. He argues his sentence should be vacated and the case against him dismissed. (*See id.* at 20). We disagree.

We review Appellant's Rule 600 argument according to the following principles:

> In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

> The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. **An appellate court must view the facts in the light most favorable to the prevailing party.**

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally

accused from good faith prosecution delayed through no fault of the Commonwealth.

**So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime.** In considering [these] matters . . ., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Wendel*, 165 A.3d 952, 955–56 (Pa. Super. 2017) (case citation omitted) (emphases added).

In pertinent part, Rule 600 provides:

**(A) Commencement of Trial; Time for Trial**

(1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.

(2) Trial shall commence within the following time periods.

\* \* \*

(e) When an appellate court has remanded a case to the trial court, the new trial shall commence within 365 days from the date of the written notice from the appellate court to the parties that the record was remanded.

Pa.R.Crim.P. 600(A)(2)(e).

To summarize, the courts of this Commonwealth employ three steps . . . in determining whether Rule 600 requires dismissal of charges against a defendant. First, Rule 600(A) provides the **mechanical run date**. Second, we determine whether any excludable time exists pursuant to Rule 600(C).

- 11 -

We add the amount of excludable time, if any, to the mechanical run date to arrive at an **adjusted run date**.

\* \* \*

Rule 600[ ] encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence. **Any such period of delay results in an extension of the run date.** Addition of any Rule 600[ ] extensions to the adjusted run date produces the **final Rule 600 run date**. If the Commonwealth does not bring the defendant to trial on or before the final run date, the trial court must dismiss the charges.

**Wendel**, **supra** at 956 (citation omitted) (emphases added).

It is long-established that judicial delay may serve as a basis for extending the period of time within which the Commonwealth may commence trial where the Commonwealth is prepared to commence trial prior to the expiration of the mandatory period but the court[,] because of scheduling difficulties or the like[,] is unavailable.

**Commonwealth v. Malgieri**, 889 A.2d 604, 607–08 (Pa. Super. 2005) (citation and internal quotation marks omitted); **see also Commonwealth v. Wroten**, 451 A.2d 678, 681 (Pa. Super. 1982) ("A judicial delay is a justifiable basis for an extension of time if the Commonwealth is ready to proceed.") (citation omitted).

Here, in an abbreviated argument, aside from the recitation of general principles, Appellant presents only one assertion of error in the calculation of the final run date. (**See** Appellant's Brief, at 13-14). Specifically, he states that the trial court erred in adding thirty–two days to arrive at an adjusted run date of February 20, 2014.

The pertinent docket entry confirms that this Court returned the record on November 29, 2012. Therefore, the Commonwealth had one year, until November 29, 2013, to commence trial (the mechanical run date). There is no dispute about a series of intervening continuances. Appellant agrees with the trial court that as of February 7, 2013, the adjusted run date was January 19, 2014. (**See** Trial Ct. Op., at 6; Appellant's Brief, at 13).

However, Appellant asserts that there is no certification in the record that January 27, 2014, was the trial court's earliest available trial date. Therefore, he posits, the trial court was not entitled to add thirty-two days (from the May 2, 2013 hearing date to the June 3, 2013 scheduled trial date) to the adjusted run date. (**See** Appellant's Brief, at 14).

Appellant offers no authority for this assumed requirement of judicial certification. Instead, he merely cites and quotes Pa.R.Crim.P. 600(C)(3)(a)(ii), which on its face applies to continuances **requested by a party** and is therefore irrelevant to the proposition for which it is cited.[13]

---

[13] Rule 600 provides, in pertinent part:

> (3)(a) When a judge or issuing authority grants or denies a continuance:
>
> *   *   *
>
> (ii) the judge shall record the identity of **the party requesting** the continuance and the reasons for granting or denying the continuance. The judge also shall record to **which party** the period of delay caused by the continuance shall be

*(Footnote Continued Next Page)*

Moreover, Appellant's assertion ignores our standard and scope of review, which require us to view the facts in the light most favorable to the Commonwealth as the prevailing party, construing the rule in a manner consistent with society's right to punish and deter crime. *See Wendel*, *supra* at 955–56.

In any event, the record confirms that the postponement was plainly attributable to the schedule limitations of the trial court. Judicial delay is excludable and not chargeable to the Commonwealth. *See Malgieri*, *supra* at 607–08; *Wroten*, *supra* at 681. Appellant's first claim does not merit relief.

In Appellant's second claim, he complains that the trial court's grant of the Commonwealth's motion to preclude repeated reference to him as an innocent man undermined his presumption of innocence. (*See* Appellant's Brief, at 15-20). We disagree.

> We start our analysis with the general principle that the purpose of the *voir dire* system is to ensure the empaneling of a fair, competent, impartial, and unprejudiced jury. To this end, the scope of a *voir dire* examination is within the sound discretion of the trial court; absent a palpable error, we will not disturb a court's decision.

*(Footnote Continued)* ⸻

attributed, and whether the time will be included in or excluded from the computation of the time within which trial must commence in accordance with this rule.

Pa.R.Crim.P. 600(C)(3)(a)(ii) (emphases added).

*Commonwealth v. Merrick*, 488 A.2d 1, 3 (Pa. Super. 1985) (citations omitted).

Appellant cites numerous cases in two string citations for general principles of *voir dire*. (**See** Appellant's Brief, at 15). Nevertheless, he fails to relate any of them to his specific argument, that the trial court's restriction on reference to Appellant as an "innocent man" in *voir dire* undermined his constitutional presumption of innocence. (**See id.**, at 15, 19). On that basis alone, Appellant has failed to develop an argument based on controlling authority in support of his claim, and it is, accordingly, waived. **See** Pa.R.A.P. 2119(a), (b).

Moreover, the claim would not merit relief. Appellant fails to prove any prejudice to his constitutional rights. The trial court explicitly advised counsel he could argue the presumption of innocence in his opening statement, and assured counsel she would remind the panel of the presumption of innocence in her own remarks. (**See** N.T. Trial, 1/27/14, Vol. 2, at 15, 17).

Appellant argues that his counsel's reminder that he is an innocent man "counter balances the persuasive impact of the allegations against him[.]" (Appellant's Brief, at 19). This assertion is not only unsupported by any authority, it is a misreading of the scope and purpose of *voir dire*. The purpose of *voir dire* is to ensure the empaneling of a fair, competent,

impartial, and unprejudiced jury. *See Merrick*, *supra* at 3. It is not to counter-balance the negative impact of the charges brought against him.

Finally, it is long-settled that questions on *voir dire* encompassing legal principles such as the presumption of innocence are improper. *See Commonwealth v. Kingsley*, 391 A.2d 1027 (Pa. 1978) ("The singular purpose of *voir dire* examination is to secure a competent, fair, impartial and unprejudiced jury") (citation omitted).[14]

If it is improper for counsel to **ask** questions about legal principles in *voir dire*, it is even more inappropriate for counsel to assume or insinuate legal principles in *voir dire*, particularly in verbal shorthand, without proper context or explanation. It is the function and duty of the trial court, not counsel, to instruct jurors on the law. *See Commonwealth v. Cunningham*, 9 A.2d 161, 164 (Pa. Super. 1939). The trial court did not abuse its discretion. Appellant's second claim fails.

---

[14] *See also Commonwealth v. England,* 375 A.2d 1292, 1295 (Pa. 1977) (latitude permitted on *voir dire*, but inquiry should be **strictly confined to disclosing qualifications or lack of qualifications** and "whether or not the juror had formed a fixed opinion in the case as to the accused's guilt **or innocence**.") (citations omitted) (emphases added); *Commonwealth v. Richmond*, 462 A.2d 1362, 1365 (Pa. Super. 1983) (well-settled that questions encompassing principles of law such as presumption of innocence are improper); *Commonwealth v. Bright,* 420 A.2d 714, 717 (Pa. Super. 1980) (questions regarding juror understanding of specific principles of law such as presumption of innocence and burden of proof are improper); *Commonwealth v. Everett*, 396 A.2d 645, 646 (Pa. Super. 1978) (questions in nature of legal instruction prohibited).

Although our reasoning differs somewhat from that of the trial court, we may affirm on any basis provided that the court's decision is legally correct. *See Ramalingam v. Keller Williams Realty Grp., Inc.*, 121 A.3d 1034, 1049 (Pa. Super. 2015).

Judgment of sentence affirmed.

Judge Lazarus joins the Opinion.

Judge Ransom files a Concurring Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/23/18