J-S39024-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER PETER WHITE | : | |
| | : | |
| Appellant | : | No. 69 MDA 2023 |

Appeal from the Judgment of Sentence Entered September 9, 2022
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0000700-2019

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED:  DECEMBER 27, 2023**

Christopher Peter White appeals from the judgment of sentence imposed after a jury convicted him of three counts each of delivery of a controlled substance and criminal use of a communication facility.[1] White challenges the weight of the evidence, the discretionary aspects of his sentence, and the denial of several pretrial motions. We affirm.

The convictions against White stemmed from three separate drug transactions where White delivered crack cocaine to a confidential informant ("CI") on three dates: January 18, 2019, April 1, 2019, and April 22, 2019. The jury acquitted White of delivery of a controlled substance and criminal use of a communication facility relating to a separate incident on January 15, 2019.

---

[1] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S.A. § 7512, respectively.

The trial court summarized the facts as follows:

For each transaction, the CI called or texted White (a.k.a. "Homey") to arrange to meet him to purchase cocaine from him. Then he contacted Trooper Mitchell McMunn. Trooper McMunn came to the CI's residence, and strip-searched the CI. The CI entered Trooper McMunn's vehicle, and Trooper McMunn drove the CI to an area near White's apartment, which was located above the K-Bar in Williamsport, Pennsylvania. Trooper McMunn gave the CI $100 in pre-recorded funds to purchase the cocaine. The $100 consisted of five $20 bills that Trooper McMunn photocopied to record the serial numbers on the bills. The CI got out of the vehicle, went upstairs to White's apartment, handed White the money, White handed the CI the cocaine, and the CI left White's apartment. He returned to Trooper McMunn's vehicle and provided the cocaine to Trooper McMunn. Trial Transcript, 08/31/2022, at 45. Trooper McMunn drove the CI back to his residence and strip-searched him again. Trial Transcript, at 47. At trial, the CI identified White as the person who sold the drugs. [*Id.*]

Trooper McMunn took photographs of the CI's call logs and texts with White and of the pre-recorded buy money from most of the transactions. Trial Transcript, at 102-124. The photographs of the call logs and texts were admitted as Commonwealth's Exhibits 1 through 4. The photographs of the pre-recorded buy money were admitted as Commonwealth's Exhibits 5, 8, and 12.

Trooper Brett Herbst worked surveillance for the January 18, 2019 controlled buy. He took photographs of White removing grocery bags from the rear of his vehicle, the CI meeting White near his vehicle, the CI and White go to the door up to White's apartment, the CI opening the door for White who is carrying his grocery bags, and both entering the door. Trooper Herbst also photographed White leaving in his vehicle and traveling down Third Street after the transaction was completed. *See* Commonwealth's Exhibit 17; Trial Transcript, at 179-181. Trooper Herbst did not see the CI interact with anyone other than White. At trial, Trooper Herbst also identified White as the individual who the CI met outside the K-Bar as White was unloading his grocery bags from his vehicle. Trial Transcript, at 181.

Detective Michael Cashera of the Lycoming County Narcotics Enforcement Unit (NEU) conducted surveillance from a location across the street from the K-Bar. He took videos of the CI entering

and exiting the side entrance to the stairway to the apartments above the K-Bar. These videos were saved on a flash drive and admitted as Commonwealth's Exhibits 18 and 19.

Prior to the April 22, 2019 controlled buy, Trooper McMunn obtained an anticipatory search warrant for White's apartment. Trial Transcript, at 124. The police arrested White after the this buy and searched his apartment. Trooper McMunn called the phone number the CI had been using to call and text "Homey." White's cell phone rang and Trooper McMunn's number was displayed on it. Trial Transcript, at 132.

Trooper Zachary Martin testified that he was the evidence officer for the search of White's residence. The serial numbers for the buy money [were] provided to Trooper Martin and the other members of the search team. Commonwealth's Exhibit #12 was a photograph of the buy money before it was given to the CI. Trooper Kelley located the buy money stacked on the right-hand corner of the countertop in White's apartment. The police photographed the countertop area, which showed the location of the stack of bills. This photograph was admitted as Commonwealth's Exhibit #20. Trial Transcript, at 195.

Opinion in Support of Order in Compliance with Rule 1925(a) of the Rules of Appellate Procedure ("1925(a) Op."), filed 3/23/23, at 3-5 (footnote omitted).

The jury found White guilty of the above-referenced offenses. The court sentenced White to an aggregate term of 28 to 96 months' incarceration. This sentence consisted of 14 to 48 months' incarceration for the January 18, 2019 incident, a consecutive term of 14 to 48 months' incarceration for the April 1, 2019 incident, and a concurrent term of 14 to 48 months' incarceration for the April 22, 2019 incident. *See* Sentencing Order, 9/9/22. White filed a post-sentence motion, which was denied. This appeal followed.

White raises the following issues:

1. Was the jury's finding of guilt at trial so against the weight of the evidence presented as to shock one's conscience and sense of justice?

2. Did the [c]ourt abuse its discretion when imposing sentences in the top-end of the standard range and a consecutive sentence?

3. Did the trial [c]ourt err in denying [White's] Pretrial Motions to Dismiss and Suppress?

White's Br. at 6.

## **Weight of the Evidence**

White first argues that the jury's verdict was against the weight of the evidence. He maintains the Commonwealth failed to prove that he was the individual with whom the CI arranged the delivery of controlled substances. *Id.* at 21. He points out that no law enforcement officer witnessed any delivery of controlled substances or directly observed White use an electronic device to arrange for a delivery of controlled substances. *Id.* at 25. White notes that while law enforcement observed the CI enter his apartment building, no officers saw the CI enter White's apartment. *Id.* He also argues that law enforcement failed to make a cursory search inside the building to see if there were other individuals present. *Id.* at 25-26.

White further posits that the CI was an unreliable witness because "he had stolen from the State Police previously, he was using narcotics at the time of the transactions, and he was providing 'light' weights of controlled substances" to the police. *Id.* at 26-27. White concludes that "the finding of guilt for the January 1[8], April 1, and April 22, 2019, transactions – coupled with the acquittal for the January 15th, 2019, transaction – which shared common witnesses and investigators, is unsupported by the weight of the evidence, and is a miscarriage of justice." *Id.* at 27.

When reviewing a weight challenge on appeal, we do not determine ourselves whether the verdict was against the weight of the evidence. Rather, we review the trial court's exercise of its discretion in determining, in the first instance, whether to sustain the challenge. *Commonwealth v. Johnson*, 192 A.3d 1149, 1152-53 (Pa.Super. 2018). "To successfully challenge the weight of the evidence, a defendant must prove the evidence is so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa.Super. 2017) (internal quotation marks and citation omitted). Further, "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (quoting *Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999)). "When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited." *Commonwealth v. Bowen*, 55 A.3d 1254, 1262 (Pa.Super. 2012) (citation omitted).

Here, the trial court found that the jury's verdict did not shock the court's conscience. It noted that the jury convicted White of the charges for which there was police corroboration of the CI and acquitted White of the charges where there was little corroboration. *See* 1925(a) Op. at 6. The court further opined:

> Given the surveillance videos and photographs, White's cell phone ringing when Trooper McMunn called the number the CI was using to call and text "Homey," the CI's call and text logs with "Homey," and the buy money, all of which tended to corroborate the CI's testimony with respect to the latter three incidents, the court was not shocked by the jury's verdict.

*Id.* at 7.

We discern no abuse of discretion in the trial court's determination. The jury was free to believe all, part, or none of the evidence presented in judging the credibility of the witnesses, and presumably credited the Commonwealth's witnesses. *Champney*, 832 A.2d at 408. The jury, in fact, heard testimony from the CI, in which he acknowledged his prior convictions for retail theft, robbery, forgery, access device fraud, theft by deception, and two pending DUI charges, *see* N.T. Trial, 8/31/22, at 41-42, and credited the CI's testimony accordingly. White essentially asks this Court to reassess and reweigh the evidence presented at trial, which we will not do. Our review of the record indicates that the evidence supporting the jury verdicts was not tenuous, vague, or uncertain. Therefore, we discern no abuse of discretion in the trial court's denial of White's weight challenge.

## Sentencing

White next challenges the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Conte*, 198 A.3d 1169, 1173 (Pa.Super. 2018). Before reviewing the merits of White's claim, we must determine whether: "(1) the appeal is timely; (2) the appellant has preserved his issue; (3) his brief

includes a concise statement of the reasons relied upon for allowance of an appeal with respect to the discretionary aspects of his sentence; and (4) the concise statement raises a substantial question whether the sentence is inappropriate under the Sentencing Code." ***Commonwealth v. Green***, 204 A.3d 469, 488 (Pa.Super. 2019); ***see also*** Pa.R.A.P. 2119(f) (stating that an appellant who challenges the discretionary aspects of a sentence "shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence").

Here, White has complied with the first three requirements: his appeal is timely, he preserved the issue in a post-sentence motion, and his brief includes a statement of the reasons for allowance of appeal. However, he has failed to raise a substantial question.

A substantial question exists when the appellant makes a colorable argument that the sentencing judge's actions were either inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process. ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa.Super. 2010). A bare challenge that the trial court erred in imposing consecutive rather than concurrent sentences does not raise a substantial question. ***Commonwealth v. Zirkle***, 107 A.3d 127, 133 (Pa.Super. 2014); ***Moury***, 992 A.2d at 171 ("[W]here a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code."). "The imposition of consecutive,

rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." ***Moury***, 992 A.2d at 171-72.

Here, White claims that "his sentence, particularly the decision to run counts consecutive to others, and to issue sentences within the top-end of the standard range, is not supported record." White's Br. at 20. This fails to raise a substantial question. Because the court sentenced White within the standard range of the sentencing guidelines, albeit at the high end of range, we cannot conclude that the aggregate sentence is on its face unduly harsh. ***See Moury***, 992 A.2d at 171-72. Accordingly, because White failed to raise a substantial question, his claim relating to the discretionary aspect of his sentence is without merit.

## **Pretrial Motions**

White next claims the court erred in denying several of his pretrial motions. We will address each motion in turn.

### Motion to Suppress Evidence Obtained from Search Warrant

On April 22, 2019, based on the previous three controlled buys, Trooper McMunn obtained an anticipatory search warrant for White's apartment. White argues that the anticipatory search warrant was unsupported by probable cause. White's Br. at 33. He maintains that nothing in the supporting affidavit suggested that he would be willing to meet the CI that day or had cocaine to sell. ***Id.*** at 36-37. White points out that the warrant failed to identify the

substance obtained by the CI on April 1, 2019 as cocaine. *Id.* at 35-36. He therefore argues that the last criminal activity indicated in the warrant occurred in January 2019, three months prior to the warrant's application. *Id.* White further contends the court should have suppressed the seized evidence because the affidavit of probable cause contained "material and intentional false statements[.]" *Id.* at 8. White alleges that the affidavit contained false statements that video surveillance occurred on each drug transaction and lacked information relating to the reliability and credibility of the CI. *Id.* at 37.

When reviewing the denial of a motion to suppress, we determine "whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings." *Commonwealth v. Griffin*, 24 A.3d 1037, 1041 (Pa.Super. 2011) (citation omitted). Where the Commonwealth prevailed on the motion, "we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted." *Commonwealth v. McMahon*, 280 A.3d 1069, 1071 (Pa.Super. 2022) (citation omitted). "Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial." *Id.* (citation omitted). Where the factual findings of the court are supported by the record, we will only reverse if there is an error in the legal conclusions drawn from those factual findings. *See id.*

"An anticipatory warrant is a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." *Commonwealth v. Katona*,

191 A.3d 8, 24 (Pa.Super. 2018) (*en banc*) (quoting **United States v. Grubbs**, 547 U.S. 90, 94 (2006)). "When considering whether an anticipatory search warrant was supported by probable cause under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, judicial review is confined to the averments contained within the four corners of the affidavit of probable cause." **Commonwealth v. Wallace**, 42 A.3d 1040, 1048 (Pa. 2012) (footnotes omitted).

"Most anticipatory warrants subject their execution to some condition precedent other than the mere passage of time – a so-called 'triggering condition.'" **Katona**, 191 A.3d at 24 (quoting **Grubbs**, 547 U.S. at 94). Thus, there are two requirements that an affidavit of probable cause in support of an anticipatory search warrant must meet under the Fourth Amendment: "(1) there is probable cause to believe the triggering condition will occur; and (2) if the triggering condition occurs there is a fair probability that contraband or evidence of a crime will be found in a particular place." **Wallace**, 42 A.3d at 1049 (citation and internal quotation marks omitted).

Here, the court found, based on the totality of the circumstances, that the warrant contained sufficient probable cause. It concluded:

> The affidavit [of probable cause] included three (3) prior drug transactions that articulated [White's] willingness to meet with the CI for the purpose of selling crack cocaine. In light of no assertions or evidence demonstrating any hesitation from [White], it is fair to assume that following three prior exchanges, [White] would be willing to meet with the CI on April 22nd and that he would have drugs to sell on that day. . . . In this case, the requisite fair

probability that the triggering condition w[ould] occur was established when the affidavit included the details of multiple controlled buys with [White], two of which the test results of the substance came back positive for cocaine. Even though no specific lab results had been returned to police for the substance given to the CI on April 1, 2019, it is safe to assume that McMunn's training and the visual similarities between this substance and the other two as well as its similar packaging are enough in this case. Furthermore, the affidavit includes specific, clear language about what must occur in order to trigger the execution of the search warrant.

Omnibus Motion Opinion and Order, filed 5/3/21, at 8.

The court did not err in denying the motion to suppress. The affidavit of probable cause set forth the details of three previous occasions where White supplied drugs to the CI, all of which occurred in White's apartment. Moreover, according to the affidavit, the CI had provided reliable information to the police about drug trafficking since March 2018. Also, there was police corroboration of the CI, including observations of activity consistent with drug trafficking. While the court acknowledged that the statement in the affidavit that the CI was under surveillance during the hand-to-hand transactions between White and the CI was false, **see id.** at 10, this was not fatal to the warrant, as there was no evidence that this was a deliberate false statement. **See Commonwealth v. Baker,** 24 A.3d 1006, 1018 (Pa.Super. 2011) (stating that that "the mere presence of an error in an affidavit of probable cause supporting a search warrant does not invalidate the warrant" unless it is a deliberate and material misstatement). Thus, the search warrant application provided sufficiently specific information to conclude there was probable cause

to believe that White would supply drugs to the CI on April 22, 2019. Therefore, White is due no relief on this issue.

Rule 600 Motion to Dismiss

White argues that the trial court erred in denying his motion to dismiss pursuant to Rule 600 of the Rules of Criminal Procedure. He contends that he was tried over 1,200 days after his criminal complaint was filed on April 19, 2019, and the Commonwealth failed to exercise due diligence in bringing his case to trial in accordance with his speedy trial rights. White's Br. at 41. White emphasizes that at the hearing on his Rule 600 motion, the Commonwealth did not present any evidence that it acted with due diligence. *Id.* at 41-42.

We review a trial court's decision on a Rule 600 motion for abuse of discretion. *See Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa.Super. 2004) (*en banc*). Our scope of review is limited to the trial court's findings and the evidence of record from the Rule 600 evidentiary proceeding, which we view in the light most favorable to the prevailing party. *Commonwealth v. Bethea*, 185 A.3d 364, 370 (Pa.Super. 2018).

Rule 600 provides that a trial "shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). If trial does not begin before that deadline, taking into account periods of delay in which the Commonwealth exercised due diligence in bringing the defendant to trial, as well as delay the defendant caused, the defendant may move to dismiss the charges. Pa.R.Crim.P. 600(D)(1).

When deciding a Rule 600 motion, we employ the following analysis. First, the court must determine the "mechanical run date," which is 365 days from the date of the filing of the complaint. *Bethea*, 185 A.3d at 371. Second, the court must determine whether any periods of delay are "excludable." *Id.* Excludable time for this purpose includes several possible periods of time, including the time between the filing of the written complaint and the defendant's arrest; if the defendant could not be apprehended because the defendant's whereabouts were unknown and could not be determined by due diligence; any time for which the defendant expressly waives Rule 600; delay resulting from the unavailability of the defendant or the defendant's attorney; and any continuance granted at the request of the defendant or the defendant's attorney. *Hunt*, 858 A.2d at 1241. We "add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date." *Bethea*, 185 A.3d at 371 (citation and emphasis omitted).

If the trial did not occur before the adjusted run date, we then must decide whether the additional delay was excusable. Under Rule 600, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence," while "[a]ny other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1). Excusable delay for purposes of Rule 600 is any delay that was outside the control of the Commonwealth and not the result of the Commonwealth's lack of exercise of due diligence. *Hunt*, 858 A.2d at 1241.

- 13 -

If the Commonwealth does not bring the defendant to trial within the time required under Rule 600(A)(2)(a), the trial court must dismiss the charges. **Bethea**, 185 A.3d at 371.

Here, after a hearing on White's Rule 600 motion, the trial court denied the motion because the reasons for the delay were attributable to the COVID-19 pandemic,[2] defense motions, and defense continuance requests. **See** Opinion and Order, filed 4/18/21, at 4. Specifically, the court found the following:

> The court finds the time from April 22, 2019 to January 14, 2020 (267 days) is includable time.
>
> The court finds the time from January 14, 2020 to March 16, 2020 (62 days) is excludable time due to a defense continuance request.
>
> The court finds the time from March 16, 2020 to May 31, 2021 is excludable time due judicial emergency orders related to the COVID-19 pandemic (441 days).
>
> The court finds the time from May 31, 2021 to August 6, 2021 (67 days) is excludable due to a defense continuance request.
>
> The court finds the time from August 6, 2021 to December 20, 2021 (136 days) is excludable time due to [White's] motion for a change of venue.
>
> The court finds that December 20, 2021 to January 5, 2022 (16 days) is includable time.

_____

[2] The trial court's orders unambiguously suspended Rule 600 during the COVID-19 emergency. "If an order unambiguously suspends Rule 600 without qualification, then the period of the suspension is added to the run date without considering the Commonwealth's diligence." **See Commonwealth v. Lear**, 290 A.3d 709, 719 (Pa.Super. 2023).

> The court finds that January 5, 2022 to the present is excludable time due to [White's] motion to dismiss.
>
> According to the court's calculations, 283 days have elapsed since the filing of the criminal complaint, consisting of 267 days from April 22, 2019 to January 14, 2020 and 16 days from December 20, 2021 to January 5, 2022. As this is less than 365 days, the court will deny [White's] motion to dismiss.

*Id.* at 3-4 (footnotes omitted).

Notably, White does not dispute the court's calculations. Rather, White argues the Commonwealth failed to exercise due diligence. However, because the adjusted run date was less 365 days, the Commonwealth was not required to prove due diligence. Accordingly, this claim fails.

Motion to Suppress Evidence Pursuant to Rules 209 and 210

White lastly argues that the court erred in denying his pretrial motion to suppress evidence under Pennsylvania Rules of Criminal Procedure 209 and 210 relating to the return of inventory following the execution of a search warrant. Rule 209 mandates that "[t]he law enforcement officer executing the search warrant shall return the search warrant promptly after the search is completed, along with any inventory [of items seized], to the issuing authority." Pa.R.Crim.P. 209(A). Rule 210 provides that "[t]he judicial officer to whom the warrant was returned shall file the search warrant, all supporting affidavits, and the inventory with the clerk of the court of common pleas of the judicial district in which the property was seized." Pa.R.Crim.P. 210.

White argues that the affiant of the warrant "failed to abide by the mandates of [Rules 209 and 210] in that he never returned to the issuing magistrate the executed warrant, its affidavit of probable cause, and the

- 15 -

inventory of items seized as mandated by those rules." White's Br. at 12. While White recognizes that these rules are procedural in nature, he argues that his due process rights were violated because "the anticipatory warrant was never returned to the issuing magistrate or filed with the Clerk of Courts of Lycoming County." *Id.* at 44. As a result, he suggests that the evidence from the search should have been suppressed. *Id.* at 44-45.

A motion to suppress evidence shall be contained in an omnibus pretrial motion unless the opportunity did not previously exist, or the interests of justice otherwise require. *See* Pa.R.Crim.P. 581(B). If a timely motion is not made, "the issue of suppression of such evidence shall be deemed to be waived." *Id.*

Here, White did not raise this issue in his written omnibus pretrial motion. Rather, he orally raised the issue at the start of his trial. *See* N.T. Trial, 8/31/22, at 18-21. The court denied the motion because of its untimeliness but allowed counsel the right to raise it again in a post-sentence motion. *Id.* at 21-22. White failed to raise this issue in his post-sentence motion.

In addressing the timeliness of White's motion, the court stated:

Defense counsel argued that he had been trying to obtain the information from the Commonwealth for some time and the Commonwealth provided some information two weeks prior to trial but it was not the requested information. In light of these circumstances, defense counsel argued that he raised the motion within a reasonable time thereafter. If defense counsel was requesting information from the Commonwealth on this subject, he had reason to believe there was an issue. Furthermore, the defense did not need to rely on the Commonwealth. Instead,

requests could have been made to the MDJ and the clerk of courts well before the days or weeks prior to trial. ***See*** Pa.R.Crim.P. 209(D) ("The judicial officer to whom the return was made shall, upon request, cause a copy of the inventory to be delivered . . . to the person from whom, or from whose premises, the property was taken.")[.]

1925(a) Op. at 10.

We agree with the trial court that the motion was untimely and White has therefore waived this issue. Even if the issue were not waived, White failed to show how any alleged deviations from Rules 209 and 210 were not merely technical in nature, deprived him of any constitutional rights, or substantially prejudiced him.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/27/2023</u>